# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Taqueria El Primo LLC, Victor Manuel Delgado Jimenez, and María Isabel Martínez Mondragón, on behalf of themselves and others similarly situated, | Case No. 19-CV-03071 (JRT/BRT) |
| Plaintiffs, | **AMENDED COMPLAINT** |
| v. | **Demand for Jury Trial** |
| Farmers Group, Inc., Truck Insurance Exchange, Farmers Insurance Company, Farmers Insurance Exchange, and Illinois Farmers Insurance Company, | |
| Defendants. | |

## I.    INTRODUCTION

1.      This lawsuit arises from the actions of Farmers Group, Inc., Truck Insurance Exchange, Farmers Insurance Exchange, Farmers Insurance Company, and Illinois Farmers Insurance Company (acting collectively as "Farmers" or "Defendants") to unlawfully restrict the choice of medical providers available to Farmers' insureds following auto accidents.

2.      As a matter of corporate policy, Farmers has limited the treatment options available to its insureds in Minnesota by entering contracts with health care providers under which the providers effectively agree not to treat any person eligible for coverage under a

544372.5

policy issued by Farmers and affiliated insurance companies. These contracts are not disclosed to Farmers' policyholders or to the public.

3.      Not only is Farmers' network of excluded providers never disclosed, but Farmers' policies promise that, following an automobile accident, Farmers will pay for any treatment that is covered under the policy terms.

4.      Farmers' conduct therefore is fraudulent, deceptive, and in violation of the terms of Farmers' policies, because Farmers' policies promise coverage for any necessary treatment following an accident, regardless of the provider, when—in reality—Farmers has entered agreements to limit the providers who will treat Farmers' insureds.

5.      Accordingly, on behalf of themselves and others similarly situated, Plaintiffs seek an order voiding any contractual provision that limits the rights of any Farmers' insured to select the provider of his or her choice. Plaintiffs further seek an injunction preventing Farmers from enforcing agreements in the future and, in addition to other relief, damages to recover the benefit of their bargain—i.e., policies compliant with the terms therein, instead of policies subject to hidden limitations.

## II.      JURISDICTION

6.      This court has original jurisdiction over this matter pursuant to Minn. Stat. § 484.01, subd. 1, because it is a civil action brought within the Fourth Judicial District under the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. §§ 325F.68–.70, and the Minnesota Uniform Deceptive Trade Practices Act ("UDTPA"), Minn. Stat. §§ 325D.43–.48.

7.     This court also has jurisdiction over this matter pursuant to the Private Attorney General statute, Minn. Stat. § 8.31, subd. 3a, which permits private civil actions to recover damages, costs, and disbursements, including reasonable attorney's fees and other equitable relief, for violations of the MCFA and the UDTPA.

## III.    PARTIES

8.     Plaintiff Taqueria El Primo LLC is a Minnesota limited liability corporation formed under the laws of Minnesota. Taqueria El Primo operates a food truck business in Minneapolis, Minnesota and is the insurance policyholder.

9.     Plaintiff Victor Manuel Delgado Jimenez is a Minnesota citizen and is the sole member and manager of Taqueria El Primo.

10.     Plaintiff María Isabel Martínez Mondragón is a Minnesota citizen and works at Taqueria El Primo.

11.     Plaintiffs Jimenez and Mondragón fall within the definition of "Insureds" contained in Policy No. ████-61-74 issued to Plaintiff Taqueria El Primo LLC (the "Farmers Policy") because they sustained bodily injuries while occupying an insured vehicle. Farmers issued the Farmers Policy to Plaintiff Taqueria El Primo.

12.     Defendant Farmers Insurance Exchange and Defendant Truck Insurance Exchange both are inter-insurance exchanges organized and existing under the laws of the State of California. Defendant Farmers Insurance Exchange owns Illinois Farmers Insurance Company.

13.     Although the insurance exchanges—Farmers Insurance Exchange and Truck Insurance Exchange—are listed as the companies issuing policies of insurance, Farmers

Group, Inc. provides services to the exchanges. In past legal proceedings, representatives from Farmers Group, Inc. have testified that neither Farmers Insurance Exchange nor Truck Insurance Exchange have any employees of their own. Rather, Farmers Group issues policies on behalf of the two exchanges, and acts as representatives of the exchanges. Similarly, in past litigation, Farmers Insurance Exchange and Truck Insurance Exchange have jointly brought suit with Farmers Group, Inc.[1] as plaintiffs for injuries they allegedly suffered jointly after a former insurance agent allegedly breached a single contract with the collection of Farmers entities by allegedly taking trade secrets owned collectively by the Farmers entities, some of which were held in a single repository.

14.     As explained in greater detail below, Defendants present themselves to the public as one entity—under the name "Farmers"—and in fact operate as a single entity. All the defendants share agents and management, including a Special Investigations Unit ("SIU"). Individuals acting on behalf of all the defendants acted to create and carry out the fraudulent scheme described in this Amended Complaint.

15.     Plaintiffs purchased the Farmers Policy from agent Miguel Medrano Rodriguez to insure Taqueria El Primo. Mr. Medrano Rodriguez advertises himself and holds himself out as an agent of Farmers Insurance, which—according to Mr. Medrano Rodriguez's materials—encompasses all the Defendants and other corporate entities.

---

[1] *See generally Farmers Ins. Exch., et al. v. Myung*, Case No. 19-cv-01606 PAM/ECW (D. Minn.).

16.     Policy documents issued to Plaintiffs came from "Farmers Insurance" although the policy declaration indicated that the Policy was issued by "Farmers Insurance" and "Truck Insurance Exchange, Member of the Farmers Insurance Group of Companies."

17.     Along with policy documents, Defendants received correspondence from Bryan Murphy, who represented himself as President of Business Insurance at "Farmers Group Inc." and "Vice President, Truck Underwriting Association." Truck Underwriting Association acts as the attorney-in-fact for Farmers Insurance Exchange, and Farmers Insurance Exchange owns Illinois Farmers Insurance Company.

18.     All the representations to Plaintiffs described below were made by an agent for "Farmers," and Plaintiffs made premium payments to "Farmers Insurance" and understood they were insured by "Farmers Insurance."

19.     Defendants sell automobile insurance policies to consumers in Minnesota for, among other things, personal injury protection ("PIP") benefits required under Minnesota law.

## IV.     FACTUAL ALLEGATIONS

**A.     Minnesota's No-Fault Act prohibits limitations on provider choice.**

20.      In Minnesota, automobile insurance is governed by the Minnesota No-Fault Automobile Insurance Act, Minn. Stat. § 65B.41–.71 ("the No-Fault Act"). The No-Fault Act "is a comprehensive and highly-detailed statutory scheme that governs the compensation of persons injured in automobile accidents." *Stout v. AMCO Ins. Co.*, 645 N.W.2d 108, 112 (Minn. 2002).

21.    The purposes of the No-Fault Act include "encourag[ing] appropriate medical and rehabilitation treatment of the automobile accident victim by assuring prompt payment for such treatment." Minn. Stat. § 65B.42(2). The No-Fault Act also prohibits an insurer from providing benefits that are less than those provided for by the Act, or "that involve any preestablished limitations on the benefits." Minn. Stat. § 65B.44, subd. 1(b).

22.    To those ends, the No-Fault Act requires companies that offer automobile insurance to provide basic economic loss and medical expense benefits when an insured suffers a loss arising out of the use or maintenance of an automobile. Insurers must reimburse all reasonable medical expenses for, among other things, necessary medical, surgical, chiropractic, x-ray, optical, dental, and rehabilitative services.

23.    The No-Fault Act does not allow automobile insurers to limit the providers from whom its insureds may seek treatment following an accident. The No-Fault Act also does not permit an insurer to limit the amount a particular provider may bill for care provided to injured persons. To the contrary, subject to statutory limits, the Act guarantees that "a person entitled to basic economic loss benefits under this chapter is entitled to the full medical expense benefits . . . and may not receive medical expense benefits that are in any way less than those provided for [by the Act], or that involve any preestablished limitations on the benefits." Minn. Stat. § 65B.44, subd. 1(b).

24.    The statute further prohibits any "reparation obligor"—i.e., automobile insurance company—from entering into any contract that "provides, or has the effect of providing, managed care services to no-fault claimants." Minn. Stat. § 65B.44, subd. 1(c). "Managed care services" means "any program of medical services that uses health care

providers managed, owned, employed by, or under contract with a health plan company." *Id.*

25.     The No-Fault Act identifies only one instance when a provider may be excluded from coverage: when the provider is convicted of insurance fraud under the criminal code. *See* Minn. Stat. § 65B.44, subd. 2a.

26.     In almost all circumstances, no-fault coverage is primary, which means that no other type of insurance coverage will pay for medical treatment related to an automobile accident until all no-fault benefits are exhausted. *See* Minn. Stat. § 65B.61, subd. 1. As a result, a no-fault insurer has a duty to pay benefits to reimburse an injured person's loss, even if the injured person is entitled to compensation for the same loss from a different source.

27.     Moreover, a no-fault insurer is required to pay the full amount charged for treatment provided to a patient even if the provider does not bill the patient that amount. For example, if the provider discounts charges for treatment, the No-Fault Act requires the no-fault insurer to reimburse the provider for the total amount of treatment without the discount.

28.     Claims for no-fault benefits belong to individual insureds, like Plaintiffs. Therefore, a provider cannot simply agree not to charge for treatment provided to patients insured by certain no-fault insurer or "reparation obligors," because the patient still can recover the costs of treatment from the no-fault insurer. If a health care provider agrees not to bill a no-fault carrier for treatment provided to its insureds, it has effectively agreed not to treat any patient insured by that no-fault carrier.

**B.      Farmers creates a scheme to deceive consumers.**

29.     Farmers has developed a scheme to limit the medical treatment available to its insureds, despite the requirements of the No-Fault Act and the terms of Farmers' policies. Farmers' scheme starts by identifying medical providers that have increased their billing to Farmers. Farmers then approaches the providers, accuses them of improper conduct, and demands the providers agree not to bill Farmers in the future.

30.     Farmers operates its scheme through a Special Investigation Unit ("SIU") and through outside legal counsel who work with its SIU. One of Farmers' SIU representatives, Timothy Blegen, has boasted about Farmers' strategy of targeting disfavored providers for exclusion. This strategy allegedly has been authorized directly by Farmers' upper management, which has instructed Farmers' SIU, along with legal counsel working alongside SIU, to eliminate future billing from certain providers.

31.     In response to the corporate directive, Farmers' outside legal counsel and Farmers' SIU investigators identify providers based, at least in part, on the amounts the providers have billed to Farmer and then threaten the disfavored providers with legal action, licensing-board complaints, and the negative publicity that comes with either. Farmers tells these providers that, regardless of the merits of these complaints, the expense and negative publicity associated with the complaints will destroy their businesses and careers.

32.     After raising the possibility of career-ending litigation, negative publicity, and action against their licenses, Farmers tells the providers they can avoid these consequences by agreeing not to bill Farmers in the future.

33.     If Farmers truly believed these providers were engaged in illegal or unprofessional conduct, Farmers could report the providers to law enforcement or to the relevant licensing board. But Farmers is not actually interested in stopping this allegedly wrongful conduct, because the wrongful conduct usually does not exist. Farmers is actually interested in stopping certain providers from billing Farmers.

34.     Farmers' tactics thus intentionally undermine the availability of benefits under insurance policies issued by Farmers and the purposes of the No-Fault Act itself. Farmers is interested only in reducing the number of providers in the community who bill Farmers for treatment.

35.     Farmers' efforts to limit the number of providers available to bill Farmers has apparently succeeded in reducing the number of Minnesota claims submitted to Farmers. Mr. Blegen told one provider that more than forty providers entered agreements not to bill Farmers in or around 2014. Mr. Blegen further indicated that Farmers' corporate leadership was pleased and emboldened by the fact that now many providers would not be billing Farmers in the future.

**C.     Farmers fraudulently conceals the secret network of excluded providers.**

36.     Plaintiff Taqueria El Primo LLC owns and operates a food truck in Minneapolis. Plaintiff's food truck is insured under the Farmers Policy. The Minnesota Personal Injury Protection section of the Farmers Policy is attached as Exhibit A to this Complaint.

37.     Plaintiff Jimenez has a personal vehicle that is insured under a policy issued by Progressive.

38.     When Jimenez purchased the Farmers Policy for Taqueria El Primo, he discussed the terms of the policy with a Farmers agent named Miguel Medrano Rodriguez, located in Richfield, Minnesota.

39.     Mr. Rodriguez told Plaintiffs Jimenez and Mondragón that the Farmers Policy would cover injuries sustained while driving or operating the food truck owned and operated by Taqueria El Primo LLC.

40.     Mr. Rodriguez did not disclose to Plaintiffs Jimenez and Mondragón that there were certain providers who would not treat persons insured by Farmers, nor did he disclose that Farmers had created a secret network of providers who could not treat persons insured by Farmers.

41.     The terms of the Farmers Policy do not disclose the secret network of excluded providers. To the contrary, the Farmers Policy expressly provides that Farmers "will pay, in accordance with the Minnesota No-Fault Automobile Insurance Act, Personal Injury Protection benefits incurred with respect to 'bodily injury' sustained by an 'insured' caused by an 'accident' arising out of the maintenance or use of a 'motor vehicle' as a vehicle."

42.     Among the "Personal Injury Protection benefits" identified by the relevant Farmers Policy are "Medical Expenses," defined by the policy to include "all reasonable expenses incurred for necessary . . . Medical, surgical, x-ray, optical, dental, chiropractic, and rehabilitative services, including prosthetic devices."

43.     The Farmers Policy contains two pages of "Exclusions" and an additional section titled "Limit Of Insurance." None of the exclusions or limitations allows Farmers

to restrict Plaintiffs' access to certain health care providers or to require Plaintiffs to seek care from preferred providers.

**D.    Plaintiffs discover the secret network of excluded providers when they cannot seek treatment from their primary health care provider.**

44.    On May 8, 2017, Plaintiffs Jimenez and Mondragón were in the food truck owned by Taqueria El Primo at the intersection of Fourth Avenue and Lake Street in Minneapolis. The food truck was hit by a drunk driver, and Plaintiffs Jimenez and Mondragón both suffered injuries in the collision.

45.    Because Jimenez and Mondragón were in the food truck owned by Taqueria El Primo and because Farmers' insurance is primary, Jimenez and Mondragón were required to go through Farmers to receive payment for treatment of injuries related to the accident.

46.    Jimenez and Mondragón sought treatment from their longtime chiropractor, Dr. Josey Perez of Premier Health in Minneapolis.

47.    At the time of their accident, Jimenez and Mondragón considered Dr. Perez to be their primary health care provider. Jimenez and Mondragón are native Spanish speakers and appreciated that Dr. Perez also speaks Spanish.

48.    But when Jimenez and Mondragón sought treatment from Dr. Perez following their accident, they discovered that Dr. Perez could not treat them because they were insured by Farmers.

49.    Dr. Perez could have treated Jimenez and Mondragón if the accident had involved Mr. Jimenez's personal vehicle (insured by Progressive). The only reason

Jimenez and Mondragón could not be treated by Dr. Perez was because the accident involved the business vehicle insured by Farmers.

50.     For three reasons, Plaintiffs have concluded that Dr. Perez is one of the providers who has been forced to enter into a secret agreement not to bill Farmers. First, in or around 2014, Farmers' SIU investigator, Mr. Blegen, told another health care provider that Farmers intended to take action against Dr. Perez. Mr. Blegen even went so far as to say that Dr. Perez would not "survive" the action Farmers was prepared to bring against him.

51.     Second, Farmers filed a lawsuit against Dr. Perez in Minnesota state court. *See* Complaint, *Illinois Farmers Ins. Co. v. Perez*, 2015 WL 5919298, No. 27-CV-15-17220 (Minn. Dist. Ct. Oct. 1, 2015). Farmers' lawsuit alleged Dr. Perez was engaged in fraud. According to the court docket, the lawsuit against Dr. Perez settled in 2017.

52.     The facts surrounding Dr. Perez's refusal to provide treatment to Plaintiffs lead only to the conclusion that Dr. Perez entered into an agreement with Farmers not to bill Farmers in the future for treatment provided to Plaintiffs or any other person insured by Farmers.

53.     Based on comments made by Mr. Blegen, Plaintiffs believe there are dozens of other health care providers in Minnesota that have entered into similar agreements with Farmers. Information about the precise number of providers, and the identities of these providers, is exclusively within Farmers' control.

54.     The lawsuit against Dr. Perez was filed by Illinois Farmers Insurance Company, and other related companies, but the restriction on Dr. Perez applied to patients

insured by any Defendant, including Truck Insurance Exchange. This demonstrates that the Defendants acted jointly to (a) make false representations to consumers, including plaintiffs, and (b) enter into contracts to limit providers who will provide treatment to persons insured under policies issued or administered by all defendants.

**E.    Neither Plaintiffs nor any other consumers were aware of Farmers' secret network of excluded providers when they purchased automobile insurance from Farmers.**

55.    When Plaintiffs purchased automobile insurance policies from Farmers, they did not know their coverage was significantly limited. Plaintiffs did not know—and could not have known—about Farmers' secret agreement with Dr. Perez not to treat Farmers' insureds, nor did Plaintiffs know about the network of other health care providers in Minnesota from whom Plaintiffs cannot seek treatment.

56.    Plaintiffs' harm is ongoing, as they do not know how many providers have agreed not to treat them (or any Farmers' insureds).

57.    If Plaintiff Jimenez had known about Farmers' secret agreements with Dr. Perez and other providers, he would not have purchased insurance from Farmers for his business, but instead would have purchased insurance from another automobile insurer.

58.    Plaintiffs are representative of the class of all consumers, in that there is no way for any consumer to know that Farmers has created limitations on patient choice. Nothing in the policies issued by Farmers disclosed that Farmers created a secret network of excluded providers, or that a consumer's ability to seek treatment from providers of their choosing would be significantly limited by Farmers' agreements.

59.     In fact, the Farmers Policy expressly claims that Farmers "will pay, in accordance with the Minnesota No-Fault Automobile Insurance Act, Personal Injury Protection benefits incurred with respect to 'bodily injury' sustained by an 'insured' caused by an 'accident' arising out of the maintenance or use of a 'motor vehicle' as a vehicle." Among the "Personal Injury Protection benefits" identified by the Farmers Policy are "Medical Expenses," defined by the policy to include "all reasonable expenses incurred for necessary . . . Medical, surgical, x-ray, optical, dental, chiropractic, and rehabilitative services, including prosthetic devices."

60.     This representation in the policy is false because, in fact, Farmers will not pay reasonable expenses incurred for necessary health care services provided by Dr. Perez or other providers with whom Farmers has secret agreements. This is a material limitation in the coverage provision of the policy that is not disclosed to consumers.

61.     Because of the limitations, Plaintiffs, and every other person who purchased insurance from Farmers, did not receive the full services they were promised. They were unable to seek treatment from specific providers of their choice, contrary to the terms of the policy.

## V.     CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action pursuant to Minnesota Rule of Civil Procedure 23 and seek to represent a class of:

> All persons or business entities who purchased or were insured under an automobile insurance policy issued by Farmers within the applicable statute of limitations that did not disclose the existence of Farmers' network of excluded providers.

63.     The requirements for class certification under Rule 23.01 of the Minnesota Rules of Civil Procedure are met as follows:

a.      Plaintiffs are informed and believe, and on that basis allege, that during the Class Period, thousands of persons have purchased automobile insurance policies issued by Farmers. As such, the members of the Class are so numerous that joinder of all members in one proceeding would be impracticable.

b.      There are common questions of law and fact common to the Class, including without limitation:

  i.    Whether Farmers falsely represented the scope of coverage provided under Farmers' insurance policies, with terms identical or similar to the Farmers Policy;

  ii.   Whether Farmers committed fraud by failing to disclose that insurance policies issued in Minnesota would not cover medical treatment provided by certain providers, despite the promise of coverage in the policy terms;

  iii.  Whether the members of the Class sustained damages by purchasing policies that contained material undisclosed limitations, and, if so, the proper measure of such damages.

c.      The claims of the Plaintiffs are typical of the claims of the members of the Class, who purchased automobile insurance policies from Farmers and did not receive the coverage required by Minnesota law and promised by the terms of the policies. Instead, the coverage available to Plaintiffs and all members of the Class was materially limited by Farmers' secret agreements with health care providers.

d.      The Plaintiffs will fairly and adequately represent the members of the Class and have retained counsel who are competent and experienced in class action and complex litigation.

64.      The requirements of Rule 23.02(c) are met as follows:

a.      The questions of law common to the members of the Class predominate over any questions affecting only individual members.

b.      A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by many individual members of the Class may be relatively small in relation to the costs of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for members of the Class to redress the wrongs done to them individually. Furthermore, many of the members of the Class may be unaware that claims exist against Farmers.

c.      Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The names and addresses of the members of the Class are available from Farmers. Notice will be provided to the members of the Class via first class mail and/or by the use of techniques and a form of notice similar to those customarily used in class actions.

## VI.   CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT

65.     A justiciable controversy exists between Plaintiffs and Farmers relating to Plaintiffs' rights to receive medical treatment under Farmers' policies at the provider or providers of each patient's choosing.

66.     The Uniform Declaratory Judgments Act, Minn. Stat. §§ 555.01–555.16, grants courts the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

67.     The Uniform Declaratory Judgments Act also permits any party to a written contract to obtain declaratory relief regarding the party's rights under a contract.

68.     Plaintiffs hereby request the Court adjudicate this dispute between the parties and enter a judgment declaring:

(a)     Farmers' policies permit Plaintiffs to receive coverage for treatment from any provider of Plaintiffs' choice, consistent with the No-Fault Act and policy terms, regardless of any contract between Farmers and any medical provider; and

(b)     To the extent a contract between Farmers and any medical provider restricts or limits the provider's ability to treat Plaintiffs or another person insured by Farmers, such a contract is void.

### COUNT II
### MINNESOTA CONSUMER FRAUD ACT (Minn. Stat. §§ 325F.68–70)
### CLAIM FOR DAMAGES

69.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

70.     Farmers is a "person" under the definition of Minn. Stat. § 325F.68, subd. 3.

71.     Farmers engaged in fraud and misrepresentation in the sale of its automobile insurance policies. Therefore, Farmers is in violation of the Minnesota Consumer Fraud Act.

72.     When Farmers sold automobile insurance policies to consumers, including Plaintiffs, Farmers falsely stated that each policy would provide coverage for medical expenses incurred following an accident when, in fact, Farmers knew it had created a secret network of health care providers that would not treat individuals under those policies. Farmers' policies contain unlawful limitations that undermine the purposes and express provisions of the Farmers Policy.

73.     Farmers' insurance policies are fraudulent because (a) the policies contain false statements that they will cover medical expenses when they do not, and (b) the policies make false statements by omission by not disclosing the existence of a secret network of providers that have been excluded and from whom policyholders and insureds cannot seek treatment.

74.     Further, the creation of the secret network of excluded providers itself is a deceptive practice because it conceals a material fact from consumers who are selecting an automobile insurance policy.

75.     At the time it sold policies to Plaintiffs, Farmers knew its policies did not comply with the No-Fault Act because it knew there were agreements in place limiting the universe of providers from whom its insureds could receive treatment.

76.     Farmers intended that consumers would rely on these false statements at the time consumers decided to purchase a policy from Farmers, and consumers actually relied

on Farmers' false statements. Farmers actively concealed the existence of providers that could not bill Farmers in the future by requiring those providers to agree the agreements would be confidential and not disclosed to any person, including current and potential patients. Farmers also intentionally did not disclose or refer to the agreements in any public document.

77.    Plaintiffs reasonably believed that Farmers' policies would provide coverage as stated in the policies at the time they purchased them. Plaintiffs would not have purchased insurance from Farmers if they had known that Farmers had created a secret network of excluded providers which it did not disclose and which, but for their own investigation, Plaintiffs never would have discovered. Indeed, Plaintiffs still do not know the full extent of Farmers' secret network because Farmers has not disclosed to Plaintiffs (or anyone else) which providers are excluded from providing treatment to them.

78.    Plaintiffs were damaged when they relied on the misrepresentations contained in their automobile insurance policies and their coverage was subject to unlawful provider limitations.

79.    Plaintiffs are therefore entitled to seek and receive monetary damages they sustained as a result of Farmers' fraudulent conduct under Minn. Stat. § 8.31, subd. 3a.

80.    Plaintiffs are also further entitled to an award of attorney's fees, costs, and disbursements pursuant to Minn. Stat. § 8.31, subd. 3a.

## COUNT III
## MINNESOTA CONSUMER FRAUD ACT (Minn. Stat. §§ 325F.68–70)
## <u>CLAIM FOR INJUNCTIVE RELIEF</u>

81.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

82.     Farmers is a "person" under the definition of Minn. Stat. § 325F.68, subd. 3.

83.     Farmers engaged in fraud and misrepresentation in the sale of its automobile insurance policies. Therefore, Farmers is in violation of the Minnesota Consumer Fraud Act.

84.     When Farmers sold automobile insurance policies to consumers, including Plaintiffs, Farmers falsely stated that each policy would provide coverage for medical expenses incurred following an accident when, in fact, Farmers knew it had created a secret network of health care providers that would not treat individuals under those policies. Farmers' policies contain unlawful limitations that undermine their purposes and express provisions. Therefore, the representations in Farmers' policies are false.

85.     Farmers' insurance policies are fraudulent because (a) the policies contain false statements that Farmers will cover medical expenses when it will not, and (b) the policies make false statements by omission by not disclosing the existence of a secret network of providers that have been excluded from coverage.

86.     Further, the creation of the secret network of excluded providers itself is a deceptive practice because it conceals a material fact from consumers who are selecting an automobile insurance policy.

87.     At the time it sold policies to Plaintiffs, Farmers knew its policies did not comply with the No-Fault Act because it knew there were agreements in place limiting the universe of providers from whom its insureds could receive treatment.

88.     Farmers intended that consumers would rely on these false statements at the time consumers decided to purchase a policy from Farmers, and consumers actually relied on Farmers' false statements. Farmers actively concealed the existence of providers that could not bill Farmers in the future by requiring those providers to agree the agreements would be confidential and not disclosed to any person, including current and potential patients. Farmers also intentionally did not disclose or refer to the agreements in any public document.

89.     Plaintiffs reasonably believed that Farmers' policies would provide coverage as stated in the policies at the time they purchased them.

90.     Plaintiffs are therefore entitled to seek and receive injunctive relief requiring Farmers to comply with the terms of the Farmers Policy and prohibiting Farmers from enforcing limitations in its policies that are contrary to the policy terms and not disclosed to consumers.

91.     Plaintiffs are also further entitled to an award of attorney's fees, costs, and disbursements pursuant to Minn. Stat. § 8.31, subd. 3a.

## COUNT IV
## UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (Minn. Stat. §§ 325D.43–.48)

92.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

93.     Farmers engaged in deceptive trade practices when selling automobile insurance policies by making representations about compliance with the No-Fault Act that deceived consumers. Farmers' conduct created a likelihood of confusion or misunderstanding because their automobile insurance policies did not identify any limitation on providers for medical benefits under the No-Fault Act and also affirmatively stated that they complied with the No-Fault Act.

94.     Plaintiffs had no knowledge of the network of excluded providers created by Farmers, nor could Plaintiffs have known that Farmers created unlawful limitations on coverage under the No-Fault Act. Plaintiffs purchased their Farmers' automobile policies and paid premiums on the policies without knowing about any limitations on providers.

95.     Plaintiffs are therefore entitled to seek and receive injunctive relief and monetary damages they sustained as a result of Defendants' fraudulent conduct under Minn. Stat. § 8.31, subd. 3a.

96.     Plaintiffs are also further entitled to an award of attorney's fees, costs and disbursements pursuant to Minn. Stat. § 8.31, subd. 3a.

## COUNT V
## BREACH OF CONTRACT

97.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

98.     Plaintiffs and the members of the Class entered into valid and binding written contracts during the relevant time period with Defendants for the purchase of automobile insurance policies.

99.    Farmers' policies state that, under the policy, Farmers "will pay, in accordance with the Minnesota No-Fault Automobile Insurance Act, Personal Injury Protection benefits incurred with respect to 'bodily injury' sustained by an 'insured' caused by an 'accident' arising out of the maintenance or use of a 'motor vehicle' as a vehicle." Among the "Personal Injury Protection benefits" identified by the Farmers Policy are "Medical Expenses," defined by the policy to include "all reasonable expenses incurred for necessary . . . Medical, surgical, x-ray, optical, dental, chiropractic, and rehabilitative services, including prosthetic devices."

100.    For the reasons alleged above, Farmers breached these provisions of the policies issued to Plaintiffs and members of the Class.

101.    Plaintiffs and the members of the Class have performed all conditions precedent to the application of the policies.

102.    Plaintiffs and members of the Class suffered damages as a direct and proximate result of Farmers' breach of contract.

103.    Every contract contains an implied covenant of good faith and fair dealing.

104.    Farmers' conduct—including failing to provide accurate information regarding their secret "no-bill" practice, failing to provide a full network of providers to allow for all necessary and reasonable treatment as required under the Minnesota No-Fault Act, and collecting premiums while failing to provide the full coverage that the No-Fault Act affords—violated the implied covenant of good faith and fair dealing.

105.    As a result of the foregoing, Plaintiffs and the members of the Class are entitled to:

a.  An order requiring Farmers to perform their contracts as they agreed to do; and

b.  Benefit-of-the-bargain compensatory damages to Plaintiffs and the members of the Class in a sum equivalent to performance of the contracts that places Plaintiff and the members of the Class in the positions they would have occupied had the contracts been fulfilled to the terms of the contract, rather than breached.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court enter the following judgment, in Plaintiffs' favor:

1.  A declaratory judgment that any contractual provision limiting coverage guaranteed under the Farmers Policy and/or the No-Fault Act is void;

2.  A permanent injunction enjoining Farmers from further violations of the Minnesota Consumer Fraud Act and the Minnesota Uniform Deceptive Trade Practices Act;

3.  An award of damages to Plaintiffs for Breach of Contract and violations of Minnesota Consumer Fraud Act and the Minnesota Uniform Deceptive Trade Practices Act, in an amount to be established at trial;

4.  An award of costs, fees, expenses, and pre-judgment and other statutory interest as permitted by law; and

5.  Such other relief as is just and equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: December 13, 2019

**/s/ David W. Asp**
David W. Asp, MN #344850
Kristen G. Marttila, MN #346007
Jennifer L. M. Jacobs, MN #328753
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:   (612) 339-6900
Facsimile:   (612) 339-0981
dwasp@locklaw.com
kgmarttila@locklaw.com
jlmjacobs@locklaw.com

Anne T. Regan, MN #333852
Nathan D. Prosser, MN #329745
HELLMUTH & JOHNSON PLLC
8050 West 78th Street
Edina, MN 55439
Telephone:   (952) 941-4005
Facsimile:   (952) 941-2337
aregan@hjlawfirm.com
nprosser@hjlawfirm.com

Paul J. Phelps, MN #185073
SAWICKI & PHELPS, P.A.
5758 Blackshire Path
Inver Grover Heights, MN 55076
Telephone:   (651) 730-6900
Facsimile:   (651) 730-8110
pphelps@mnlawyers.com

*Attorneys for Plaintiffs*