# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| TAQUERIA EL PRIMO LLC, VICTOR MANUEL DELGADO JIMENEZ, MITCHELLE CHAVEZ SOLIS, BENJAMIN TARNOWSKI, EL CHINELO PRODUCE, INC., and VIRGINIA SANCHEZ-GOMEZ, individually and on behalf of all others similarly situated, | Civil No. 19-3071 (JRT/BRT) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| ILLINOIS FARMERS INSURANCE COMPANY, FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., TRUCK INSURANCE EXCHANGE, FARMERS INSURANCE COMPANY, INC., and MID-CENTURY INSURANCE COMPANY, | |
| Defendants. | |

Anne T. Regan and Nathan D. Prosser, **HELLMUTH & JOHNSON PLLC**, 8050 West Seventy-Eighth Street, Edina, MN 55439; David W. Asp, Derek C. Waller, Jennifer Jacobs, Kristen G. Marttila, and Stephen Matthew Owen, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Paul J. Phelps, **SAWICKI & PHELPS**, 5758 Blackshire Path, Inver Grove Heights, MN 55076, for plaintiffs.

Emily C. Atmore, Marc A. Al, and Margaret E. Dalton, **STOEL RIVES LLP**, 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402; Timothy W. Snider, **STOEL RIVES LLP**, 760 Southwest Ninth Avenue, Suite 3000, Portland, OR 97205, for defendants.

Named plaintiffs Taqueria El Primo LLC, Victor Manuel Delgado Jimenez, Mitchelle Chavez Solis, El Chinelo Produce, Inc., Virginia Sanchez-Gomez, and Benjamin Tarnowski brought a class action against Defendants Farmers Group, Inc., Trucker Insurance Exchange, Farmers Insurance Company, Inc., Farmers Insurance Exchange Company, and Mid-Century Insurance Company (collectively "Farmers"). Plaintiffs allege that Farmers entered into secret agreements with health care providers wherein the providers agreed to not bill Farmers for care provided to Farmers's insureds, thereby limiting the ability of the insureds to seek care from the provider of their choosing. Plaintiffs allege that these billing limitations breached the insurance policy contracts between insureds and Farmers and violate Minnesota's No-Fault Insurance Act. Plaintiffs bring claims under the Minnesota Consumer Fraud Act ("MCFA"), under the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), and for breach of contract. Plaintiffs now move for Class Certification and Appointment of Class Representatives and Class Counsel ("Motion for Class Certification").

Plaintiffs move to certify two classes: (1) a Damages Class defined as "[a]ll persons or entities who purchased an insurance policy on or after January 13, 2013 within the State of Minnesota from any of the Defendant Insurers that provided for medical expense benefits under Minnesota's No Fault Act," and (2) an Injunctive Class defined as "[a]ll persons or entities who purchased an insurance policy on or after January 13, 2013 within the State of Minnesota from any of the Defendant Insurers that provided for medical

expense benefits under Minnesota's No Fault Act, and who maintain that policy." Accordingly, Plaintiffs request both an award of monetary damages and an injunction enjoining Farmers from enforcing the billing limitations. Plaintiffs also seek to appoint class representatives and class counsel. Farmers opposes class certification. It also opposes appointing the proposed class representatives and appointing some of the proposed class counsel.

The Court will grant the Motion for Class Certification for the Injunctive Class. The Court will grant the Motion for Class Certification for the Damages Class on the MCFA claim. The Court will deny the Motion for Class Certification for the Damages Class on the MDTPA and breach of contract claims. The Court will also appoint the proposed class representatives and class counsel.

In addition to opposing the Motion for Class Certification, Farmers filed a Motion to Exclude Expert Testimony in Support of the Motion for Class Certification. In support of their Motion for Class Certification, Plaintiffs submitted expert opinion testimony from Allan I. Schwartz and Michael J. Rothman. Farmers moves to exclude all of Schwartz's testimony arguing he has failed to show that his methodology is the product of reliable principles and methods and is speculative and unreliable. Farmers moves to exclude various portions of Rothman's testimony as (1) inadmissible legal opinions, (2) opinions offered without foundation, (3) opinions that Rothman is not qualified to render, or (4) a combination of these. Under the focused *Daubert* analysis appropriate at class

certification, the Court will deny the Motion to Exclude Schwartz's and Rothman's testimony.

## BACKGROUND

### I.  FACTUAL BACKGROUND

#### A.    Defendants' Relationship and Farmers's Policies

Defendants are a collection of related companies in the automobile insurance business.[1]   Farmers Insurance Exchange, Truck Insurance Exchange, Illinois Farmers Insurance Company, Farmers Insurance Company, Inc., and Mid-Century Insurance Company sell insurance policies under the common name "Farmers Insurance Group of Companies."  (2nd Am. Compl. ¶¶ 31–32, June 5, 2020, Docket No. 65.)  This includes selling automobile insurance policies in Minnesota governed by Minnesota's No-Fault Insurance Act.  (*Id.*; Defs.' Joint Answer to 2nd Am. Compl. ¶¶ 31–32, June 19, 2020, Docket No. 70.)  The defendants share various services including the investigation of insurance fraud.  (2nd Am. Compl. ¶ 30; Defs.' Joint Answer to 2nd Am. Compl. ¶ 30.)  Farmers Group,

---

[1] The parties dispute the precise activities of each defendant and nature of their relationship.  (*Compare* 2nd Am. Compl. ¶¶ 1–2, 30–32, 38, June 5, 2020, Docket No. 65, *with* Defs.' Joint Answer to 2nd Am. Compl. ¶¶ 1–2, 30–32, 38, June 19, 2020, Docket No. 70.)  The Court makes no findings of fact as to the relationship between the Defendants, but the Court accepts as true those facts to which the parties have agreed or not denied in the answer.  For the Motion for Class Certification, the Court also accepts Plaintiffs' substantive allegations in their Second Amended Complaint as true.  *See Mathers v. Northshore Mining Co.*, 217 F.R.D. 474, 483 (D. Minn. 2003)

Because both Plaintiffs and Defendants refer to the Defendants collectively as "Farmers," the Court will do so as well unless discussing a fact or issue only relevant to one or a subset of the Defendants.

Inc. provides various common services to the other Defendants including legal and underwriting services, billing, advertising, drafting policy language and forms, internal investigations and discipline, and regulatory filings. (1st Decl. of David W. Asp ("1st Asp Decl."), Ex. 2 at 64:17–69:7, 112:18–118:19, 119:18–123:19, 135:8–137:25, 142:23–145:20, Mar. 30, 2021, Docket No. 129-1.)

Farmers sells insurance policies in Minnesota.  These policies purport (1) to conform to Minnesota's No-Fault Automobile Insurance Act ("No-Fault Act") and (2) to pay "all reasonable expenses incurred for necessary [m]edical, surgical, x-ray, optical, dental, chiropractic and rehabilitative services."  (Defs.' Joint Answer to 2nd Am. Compl. ¶ 3; 2nd Am. Compl. ¶ 69; *see also* Am. Compl., Ex. A at 3, Dec. 13, 2019, Docket No. 8-1.)[2] The No-Fault Act guarantees that insureds who have policies governed by the Act are "entitled to the full medical expense benefits set forth in [the Act], and may not receive medical expense benefits that are in any way less than those provided for in [the Act], or that involve any preestablished limitations on the benefits.  Medical expenses must be reasonable and must be for necessary medical care . . . ."  Minn. Stat. § 65B.44, subd. 1(b). The Act further requires insurance companies to "reimburse all reasonable expenses for necessary . . . medical, surgical, x-ray, optical, dental, chiropractic, and rehabilitative services, including prosthetic devices."  Minn. Stat. § 65B.44, subd. 2(a).  The law explicitly

---

[2] Except in the case of citations to deposition transcripts, all citations to page numbers in the record use the CM/ECF pagination if available.

provides one limitation on reimbursement: persons convicted of insurance fraud "may not enforce a contract for payment of services eligible for reimbursement under [the Act] against an insured or an [insurer]."  Minn. Stat. § 65B.44, subd. 2a(a); *see also* Minn. Stat. § 65B.43, subd. 9.

Collectively, Farmers has issued hundreds of thousands of affected policies worth more than $1 billion in total premiums paid over the relevant time period.  (1st Asp Decl., Ex. 20 at 5, Mar. 30, 2021, Docket No. 129-18.)

### B.    Billing Limitations

Farmers entered into confidential contracts with certain health care providers under which the providers agreed not to bill Farmers for any treatment provided to someone insured by Farmers.  (2nd Am. Compl. ¶¶ 2, 29; Defs.' Joint Answer to 2nd Am. Compl. ¶ 2; *see also, e.g.*, Decl. of John P. Darnell ("Darnell Decl."), Ex. 43 ¶ 2, May 28, 2021, Docket No. 159.)  Farmers alleges that these contracts are confidential settlement agreements that ended investigations and litigation initiated by Farmers because the providers were engaged in insurance fraud and fraudulent billing.  (Defs.' Joint Answer to 2nd Am. Compl. ¶ 2.)

Farmers did not disclose the existence of these contracts or the billing limitations to third parties including purchasers of affected insurance products.[3]  (*Id.*; 2nd Am. Compl.

---

[3] Farmers calls the agreements "billing moratoria" and Plaintiffs call the agreements "no-bill agreements."  The Court calls them "billing limitations."  The parties do not dispute the content or meaning of the agreements at this stage.

¶ 2.)  Although the full settlement agreements were required to remain confidential, some agreements allowed Farmers to disclose the existence of the billing limitations. (*E.g.*, Darnell Decl., Ex. 1 ¶¶ 3, 6, Ex. 43 ¶ 2.3.)  Others, however, only allowed disclosure of the billing limitation in the context of an actual claim.  (*E.g.*, Darnell Decl., Ex. 48 at 13.) Purchasers of insurance products from Farmers were thus unaware that there were certain providers that were not permitted to bill Farmers if a Farmers policyholder sought care from the provider.  (*See* 2nd Am. Compl. ¶ 68.)

The number of providers subject to these agreements varied with time.   For example, a lawsuit against 95 providers resulted in 28 settlement agreements with billing limitations that expired after varying amounts of time.  (Darnell Decl. ¶¶ 25–30.)  Some billing limitations are perpetual and will never end absent an agreement between Farmers and provider.  (*See id.* ¶¶ 29–30.)

## II.    CLASS CLAIMS AND CERTIFICATION

### A.    Class Claims

Plaintiffs on behalf of themselves and all others similarly situated, filed this lawsuit against Farmers.  In their Second Amended Complaint, Plaintiffs bring class action claims against Farmers for violations of the MCFA and the MDTPA as well as for breach of contract under Minnesota law.  (2nd Am. Compl. ¶¶ 82–119.)  They seek a declaratory judgment that any contractual provision limiting coverage guaranteed either by the insurance policies or the No-Fault Act is void, an injunction prohibiting Farmers from

enforcing any limitations that violate the policy terms or No-Fault Act, and monetary damages. (*Id.* at 26–27.)

Plaintiffs' claims rely generally upon the contention that Farmers used materially identical policy terms in describing the relevant coverage to which the No-Fault Act applied identically for all potential class members. The Plaintiffs, therefore, assert that the billing limitations violated the terms of the policies and the No-Fault Act in a materially identical manner across all insureds and Defendants even if the number of providers subject to the billing limitations varied with time. As a result, Plaintiffs contend, class members did not receive the value guaranteed by the policies or required by law irrespective of whether a policyholder was denied care or coverage at an affected provider or filed a claim under the relevant policy provision.

### B. Proposed Classes

Plaintiffs seek to certify two slightly different classes. First, they seek to certify a "Damages Class" under Federal Rule of Civil Procedure 23(b)(3). (Mot. for Class Cert. & App't of Class Reps. & Class Counsel ("Class Cert. Mot.") at 1, Mar. 30, 2021, Docket No. 124.) This class is defined as:

> All persons or entities or purchased an insurance policy on or after January 17, 2013 within the State of Minnesota from any of the Defendant Insurers that provided for medical expense benefits under Minnesota's No Fault Act.

(*Id.* at 1–2.)

Second, Plaintiffs seek to certify an "Injunctive Class" under Federal Rule of Civil Procedure 23(b)(2). (*Id.*) This class is defined as:

> All persons or entities or purchased an insurance policy on or after January 17, 2013 within the State of Minnesota from any of the Defendant Insurers that provided for medical expense benefits under Minnesota's No Fault Act, and who maintain that policy.

(*Id.* at 2.)

The only difference in definitions is that potential class members in the Injunctive Class must still have a relevant policy from Farmers in effect whereas potential members of the Damages Class may but are not required to currently maintain a policy.[4]

## C.   Proposed Class Representatives

In keeping with the differences between the proposed classes, Plaintiffs propose two different groups of class representatives.

For the Damages Class, Plaintiffs propose Taqueria El Primo LLC, Mitchelle Chavez Solis, El Chinelo Produce, Inc., Virginia Sanchez-Gomez, Benjamin Tarnowski, and El Chinelo Market, LLC.[5] (Class Cert. Mot. at 2.) For the Injunctive Class, Plaintiffs propose Virginia Sanchez-Gomez and El Chinelo Market, LLC. (*Id.*)

---

[4] Plaintiffs exclude from both proposed classes Farmers employees or officers, any entity Farmers has a controlling interest in, any entity that has a controlling interest in any Defendant, Farmers's legal representatives, Farmers's assigns and successors, and any judge to whom this case is assigned and immediate family members of that judge. (Class Cert. Mot. at 2.)

[5] All proposed representatives except El Chinelo Market, LLC are named plaintiffs. Class representatives need not be named plaintiffs. *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 404 n.58 (D. Mass. 2013).

Taqueria El Primo LLC is a Minnesota limited liability company that operates a food truck business in Minnesota and purchased an automobile insurance policy issued by Defendant Truck Insurance Exchange. (2nd Am. Compl. ¶¶ 8–9.) Taqueria El Primo is no longer insured by any Defendant. (Defs.' Joint Answer to 2nd Am. Compl. ¶ 9.)

Mitchelle Chavez Solis purchased an automobile insurance policy issued by Defendant Illinois Farmers Insurance Company on December 7, 2016. (2nd Am. Compl. ¶ 11.) Chavez Solis is no longer insured by any Defendant. (Defs.' Joint Answer to 2nd Am. Compl. ¶ 11.)

El Chinelo Produce, Inc. is a Minnesota corporation that purchased an automobile insurance policy issued by Defendant Mid-Century Insurance Company to cover vehicles El Chinelo Produce, Inc. owned. (2nd Am. Compl. ¶ 12.) El Chinelo Produce is no longer insured by Mid-Century Insurance Company. (Defs.' Joint Answer to 2nd Am. Compl. ¶ 12.)

Virginia Sanchez-Gomez is an owner of El Chinelo Produce and purchased the relevant insurance coverage for El Chinelo Produce. (2nd Am. Compl. ¶ 13.) Sanchez-Gomez was injured while occupying a vehicle insured under El Chinelo Produce's policy with Mid-Century Insurance Company. (*Id.* ¶ 14; Defs.' Joint Answer to 2nd Am. Compl. ¶ 14.) Sanchez-Gomez has a personal automobile insurance policy with Farmers Insurance Exchange that is still in effect. (Decl. of Virginia Sanchez-Gomez ¶ 4, Mar. 30, 2021, Docket No. 138.)

Benjamin Tarnowski purchased an automobile insurance policy from Defendant Farmers Insurance Exchange.  (2nd Am. Compl. ¶ 15.)

El Chinelo Market, LLC purchased an automobile insurance policy from Defendant Mid-Century Insurance Company.  (Decl. of Virginia-Sanchez Gomez ¶ 3.)  It has a policy with Mid-Century Insurance Company that is still in effect.  (*Id.*)

It is undisputed that each of the policies purchased by the proposed class representatives purported to conform to Minnesota's No-Fault Act.  (*See* Defs.' Joint Answer to 2nd Am. Compl. ¶¶ 9, 11, 12, 15.)

### D.    Proposed Class Counsel

Plaintiffs have moved to appoint Lockridge Grindal Nauen P.L.L.P. ("LGN"), Hellmuth & Johnson PLLC, and Sawicki & Phelps, P.A. as class counsel under Federal Rule of Civil Procedure 23(g).  (Class Cert. Mot. at 2.)  Attorneys Kristen Marttila and David Asp are among the attorneys working on the case for LGN.  Farmers opposes appointing LGN arguing that it has conflicts of interests between the class and other clients.  (Mem. Law Opp. Mot. for Class Cert. ("Mem. Opp. Class Cert. Mot.") at 66–69, May 28, 2021, Docket No. 147.)

Farmers has identified some providers who were represented by attorneys Marttila and Asp as well as other LGN attorneys at the time the providers and Farmers agreed to confidential settlement agreements containing billing limitations.  (Decl. of Timothy A. Blegen ¶¶ 12, 17, 21, 44, 55, May 28, 2021, Docket No. 156.)  This includes

one of the provider agreements still in effect.  (*See id.* ¶ 57; *see also* Mem. Opp. for Class

Cert. Mot. at 67.)  Plaintiffs asserts that LGN no longer represents any of the providers

Farmers has identified and that all these past clients have given informed consent to

LGN's appointment as class counsel.  (2nd Decl. of David W. Asp ¶¶ 2–4, July 12, 2021,

Docket No. 207.)

## III.   EXPERT TESTIMONY

In support of their motion for class certification, Plaintiffs submitted expert opinion

testimony from Allan I. Schwartz and Michael J. Rothman.  (Decl. of Allan I. Schwartz ("1st

Schwartz Decl."), Mar. 30, 2021, Docket No. 133; Decl. of Michael J. Rothman ("1st

Rothman Decl."), Mar. 30, 2021, Docket No. 131.)  Farmers moved to exclude all of

Schwartz's testimony and to exclude portions of Rothman's testimony.  (Defs.' Mot.

Exclude Op. Test. at 2, May 28, 2021, Docket No. 170.)

Plaintiffs propose to use Schwartz's testimony to calculate damages on a classwide

basis.  (*See, e.g.*, Mem. in Supp. of Pls.' Mot. for Class Cert. ("Mem. Supp. Class Cert.

Mot.") at 32, Mar. 30, 2021, Docket No. 126.)  Schwartz proposes to determine a "Factor"

that he asserts can be used to calculate the decreased value proposed class members

received and Farmers's unjust enrichment or other unlawful gains which could then be

used to determine how much value each class member lost as a result of the billing

limitations.  (1st Schwartz Decl. ¶¶ 8, 15, 17–22, 29; Mem. Supp. Class Cert. Mot. at 32.)

Schwartz, however, did not calculate the factor he proposed in support of this motion.

Allan Schwartz is the president of AIA Risk Consultants, an actuarial consulting firm. (1st Schwartz Decl. ¶ 1.)  He started AIS Risk Consulting in 1984 and has worked as the Assistant Commissioner for the New Jersey Department of Insurance, as Chief Actuary for the North Carolina Department of Insurance, for another actuarial consulting firm, and for the National Council on Compensation Insurance.  (*Id.*)  He has provided expert actuarial testimony including testimony about automobile insurance in several past proceedings.  (*Id.* ¶ 5.)

Plaintiffs propose to use Rothman's testimony for several purposes including to show that (1) the billing limitations were material to insureds and state regulators; (2) the Minnesota Department of Commerce would not have allowed Farmers to sell these insurance products if Department regulators had been aware of the billing limitations; (3) even if Farmers would have been allowed to sell policies with billing limitations, the Department would not have allowed Farmers to sell policies without disclosing the limitations to policyholders; and (4) the billing limitations had a common impact on all putative class members.  (Mem. Supp. Class Cert. Mot. at 22–23, 27, 31; *see also, e.g.*, 1st Rothman Decl. ¶¶ 22, 185–86, 193, 197–99.)  Rothman also opines that the limitations and their omission harmed Plaintiffs and Minnesota consumers.  (1st Rothman Decl. ¶¶ 22, 204, 210.)

Michael Rothman is an attorney operating his own law firm, Rothman LLC, focusing on commerce and regulated industries including the insurance sector.  (*Id.* ¶ 9.)  He was

the Commissioner of the Minnesota Department of Commerce from January 2011 to November 2017.  (*Id.* ¶ 2.)  The Minnesota Department of Commerce regulates automobile insurance including implementation of Minnesota's No-Fault Act.  (*Id.* ¶¶ 3–4.)  He has practiced insurance law and has been an adjunct professor of insurance law and regulation.  (*Id.* ¶¶ 10–14.)

## IV.   PROCEDURAL HISTORY

Plaintiffs first filed a lawsuit in Hennepin County District Court on November 8, 2019.  (Notice of Removal at 1, Dec. 11, 2019, Docket No. 2.)  Farmers removed the suit to the U.S. District Court for the District of Minnesota under 28 U.S.C. §§ 1332(d)(2), 1441, and 1446.  (*Id.* at 2.)  Plaintiffs filed the Second Amended Complaint on June 4, 2020.  (2nd Am. Compl.)  Plaintiffs seek damages and ask for an order declaring the billing limitations are illegal and enjoining their enforcement.  (*Id.* at 26–27.)  The parties have engaged in substantial discovery.  (*See* Reply Mem. Supp. Defs.' Mot. to Exclude Op. Test. at 3, Aug. 4, 2021, Docket No. 242 ("[D]iscovery is almost closed.").)

Plaintiffs now seeks to certify a Damages Class and an Injunctive Class, appoint class representatives, and appoint class counsel.  (Class Cert. Mot.)  Farmers opposes this motion and seeks to exclude expert testimony Plaintiffs offered in support of their motion for class certification.  (Mem. Opp. Class Cert. Mot.; Defs.' Mot. to Exclude Op. Test.)

**DISCUSSION**

## I.      MOTION TO EXCLUDE EXPERT TESTIMONY

Farmers moved to exclude all of Schwartz's testimony and portions of Rothman's testimony that Plaintiffs provided in support of their Motion for Class Certification.  At the class certification stage, Plaintiffs rely on Schwartz to show that damages can be calculated on a classwide basis, and Rothman to show that the undisclosed billing limitations were material to all insureds, harmed insureds and the public, and Farmers would not have been permitted to sell these policies had the Department of Commerce been aware of the limitations and the lack of disclosure.  The Court will deny the motion to exclude for both experts because Plaintiffs have met their burden for admitting expert testimony at the class certification stage.

### A.      Standard of Review

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *McMahon v. Robert Bosch Tool Corp.*, 5 F.4th 900, 903 (8th Cir. 2021).  An expert's opinion testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The district court acts as a gatekeeper to the consideration of expert testimony by engaging in a *Daubert* analysis to ensure "that an expert's testimony both rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). *Daubert* and its progeny have laid out a number of factors for courts to consider in this analysis. *Lauzon*, 270 F.3d at 686–87. "The inquiry envisioned by Rule 702 is . . . a flexible one." *Daubert*, 509 U.S. at 594.

At the class certification stage, the Court conducts "a focused *Daubert* inquiry to assess whether the opinions of [the proposed experts], based on their areas of expertise and the reliability of their analyses of the available evidence, should be considered in deciding the issues relating to class certification." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 610 (8th Cir. 2011); *see also Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 925 n.2 (8th Cir. 2015). The main purpose of the full *Daubert* analysis is for the district court to act as a gatekeeper "protect[ing] juries from being swayed by dubious scientific testimony." *In re Zurn Pex*, 644 F.3d at 613. There is, however, less need for the Court to protect only itself, and the Court may conduct a less stringent application of Rule 702 and *Daubert* at the class certification stage. *See id.* As a result, when deciding whether to exclude testimony at this preliminary stage, where evidence is still evolving and uncertain and the decision is tentative, the Court considers "the expert testimony in light of the criteria for class certification and the current state of the evidence." *Id.* at

614.  The Court need not decide conclusively if the evidence it considers at this stage "will

ultimately be admissible at trial."  *Id.* at 611.  Instead, the Court inquiry into expert

testimony at the class certification stage is preliminary, limited, and focused on the

criteria for class certification.[6]

Although the Court may engage in a tailored, focused *Daubert* analysis at this

stage, *Daubert* and its progeny are still relevant to the Court's inquiry.  The proposed

evidence must be useful, the witness must be qualified to provide the proposed evidence,

and the evidence must be reliable or trustworthy.  *Lauzon*, 270 F.3d at 686.  The

proponents of the testimony bear the burden of proving its admissibility.  *Wagner v.

Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).  In a full *Daubert* analysis before a jury

trial, the Court "should resolve doubts regarding the usefulness of an expert's testimony

in favor of admissibility."  *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir.

2006).

B.      **Motion to Exclude Schwartz's Testimony**

Schwartz proposes to derive a "Factor" that can be used to calculate the decreased

value the proposed class members received and Farmers's unjust enrichment and other

gains as a result of the billing limitations which Plaintiffs argue can then be used to

determine how much value each class member lost as a result. (1st Schwartz Decl. ¶¶ 8,

---

[6] Because the Court only considers the offered testimony using this limited and focused inquiry, the Court expresses no view on the admissibility of the evidence at other stages of the case.

21–23; Mem. Supp. Class. Cert. Mot. at 32.)   Schwartz provides an explanation of the Factor including how it would be used, how it would apply on a classwide basis, a list of data sources he would consider, and other data that may affect the Factor.  (1ˢᵗ Schwartz Decl. ¶¶ 20–28.)  Schwartz, however, did not calculate the Factor for class certification.

In its initial brief, Farmers argued for exclusion on two grounds: (1) because Schwartz did not derive the Factor nor explain with sufficient detail how he would do so, it is impossible to determine if his methodology is the product of reliable principles and methods or if it could be duplicated and (2) that the Factor is speculative and unreliable because it failed account for various inputs.  (Mem. Supp. Defs.' Mot. to Exclude Op. Test. ("Mem. Supp. Mot. Exclude") at 12–13, 15–31, May 28, 2021, Docket No. 173.)   In its reply, Farmers also argued that Schwartz's Factor is unconnected to any of Plaintiffs' theories of recovery or is otherwise barred by Minnesota law.  (Reply Mem. Supp. Defs.' Mot. to Exclude Op. Test. at 8–12.)

At the class certification stage, a relevant question is whether it is possible to calculate damages on a classwide basis.  When calculating classwide damages, plaintiffs may use a mathematical model but that model "must measure only those damages attributable to [the legal] theory" on which plaintiffs seek classwide relief.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).  Plaintiffs' method of calculating the damages need not be exact but must be consistent with its liability case.  *Id.*  Although *Comcast* requires the proposed model to be tied to the theory of liability at the class certification stage, it

does not require the damages calculation to be performed at this stage. *See Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 14-786, 2016 WL 4098741, at *11 n.11 (D. Minn. July 28, 2016); *Willis v. Big Lots, Inc.*, No. 12-604, 2017 WL 1074048, at *7 (S.D. Ohio Mar. 17, 2017). "At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that [t]his method will work with certainty at this time." *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (quotation omitted).

Because a plaintiff need not perform the damages calculation at class certification, Schwartz's failure to calculate his Factor is not grounds for excluding his testimony at this stage. Schwartz provides a sufficient explanation such that the Court concludes that it is possible that he may be able to derive the Factor and, if he is able to do so, it will be possible at that time to determine whether it is the product of the application of reliable principles and methods. Farmers's concerns that he has not calculated it and argument that he has not incorporated all relevant circumstances and inputs are attacks on the accuracy of the proposed model, not on whether it is possible for Schwartz to calculate a classwide factor or whether it is tied to Plaintiffs' theory of liability. While the Factor may be speculative at this stage because Schwartz has not calculated it, Schwartz's explanation of how he will calculate it suggest that it may not be speculative once he does. Resolution of these various issues is not appropriate under the focused *Daubert* inquiry at the class certification stage, and Farmers will be able to raise these arguments at a later stage of

this case.  *See Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, No. 18-871, 2020 WL

5757695, at *14–15 (D. Minn. Sept. 28, 2020).

Schwartz's Factor is also sufficiently tied to Plaintiffs' theory of liability such that if

reliably produced at a later stage, it may be helpful to the trier of fact at that time.[7]  As

discussed below, Plaintiffs allege that Farmers violated the MCFA which caused all class

members to receive less in value than they paid for irrespective of whether they filed a

no-fault claim and resulted in unjust enrichment to Farmers.  Schwartz's model proposes

to calculate this value.  (1st Schwartz Decl. ¶¶ 8, 22, 22 n.16; Decl. of Allan I. Schwartz ¶¶

6 n.3, 8, 64–66, July 12, 2021, Docket No. 213.)  Because it is sufficiently tied to a theory

of liability, it is helpful to the Court to decide whether to grant class certification.

Because Schwartz has provided a methodology with a sufficient explanation of

how he will eventually calculate damages on a classwide basis that is tied to Plaintiffs'

theory of liability,[8] the Court will deny Farmers's motion to exclude Schwartz's testimony

at this time and will consider Schwartz's testimony in conjunction with the motion for

class certification.

---

[7] Considering whether to exclude a proposed damages model because it is not connected to a theory of liability on a motion to exclude may be premature.  At most, it would be unhelpful to the Court if unconnected.  It may be more appropriate to consider the failure to connect a damages model to a liability theory on the issue of class certification, because the failure of all proposed models to do so would defeat class certification.  *See Comcast*, 569 U.S. at 35.

[8] At this stage, Farmers does not contest whether Schwartz is qualified to offer testimony, and the Court concludes that at least for consideration of class certification he is qualified under the focused analysis the Court applies here.  (*See* 1st Schwartz Decl. ¶¶ 1–6; 1st Schwartz Decl., Ex. A, Mar. 30, 2021, Docket No. 134-1.)

### C.      Motion to Exclude Rothman's Testimony

Rothman opines that (1) the Minnesota Department of Commerce would not have allowed Farmers to sell the insurance policies had it has been aware of the billing limitations, (2) the Department of Commerce would not have allowed Farmers to sell the insurance policies without disclosing the limitations to consumers, (3) the billing limitations would have been material to both state regulations and to consumers, and (4) the billing limitations harmed consumers.   Farmers moves to exclude portions of Rothman's testimony on three different grounds: (1) the testimony includes inadmissible legal opinions, (2) Rothman's opinions that the billing limitation agreements are material is without foundation and Rothman is not qualified to give the opinion, and (3) Rothman's opinions that the billing limitation agreements harmed all class members is without foundation.[9]   The Court will consider each ground for objecting and the relevant statements in turn using the focused analysis appropriate at the class certification stage.

### 1.      Legal Opinions

Farmers objects to the Court considering certain portions of Rothman's testimony because, according to Farmers, he improperly offers legal opinions.  Matters of law are

---

[9] In addition to connecting the paragraphs and the grounds on which it objects in its motion, Farmers helpfully provided the Court with an annotated version of Rothman's testimony highlighting which statements Farmers moves to exclude and on which grounds Farmers objects to each objected to statement.  (Mot. to Exclude Op. Test., Ex. 1, May 28, 2021, Docket No. 171.) The Court will refer to this annotated version when citing to the portions of Rothman's testimony Farmers moves to exclude.

reserved exclusively for the Court.  *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003).  If an expert were permitted to offer a legal opinion to the jury, it may confuse the jury and give the appearance that the court is shifting the power to resolve legal questions to witnesses.  *Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir. 1989).

Although the Court carefully exercises its gatekeeping responsibility to protect jurors from improper legal opinions, here the Court is only keeping the gate for itself. There is much less need to protect the Court from any offered legal opinions.  *See In re Zurn*, 644 F.3d at 613.  Under the focused analysis appropriate at this stage, there is no risk of juror confusion and there is no risk the Court will be confused as to whose role it is determine matters of law.

Furthermore, many of Rothman's statements Farmers objects to as improper legal opinions are not statements of law.  For example, Farmers objects to Rothman's statements that the "Department of Commerce relies on insurers like Farmers to disclose its procedures and practices against insurance fraud" and "Farmers failed to disclose to Plaintiffs that Farmers has limited and restricted providers available to treat them."  (Mot. to Exclude Op. Test., Ex. 1 ¶¶ 109, 181, May 28, 2021, Docket No. 171.)  These are statements of fact, not law.  Other statements, however, are statements of law.  (*E.g.*, *id.* ¶ 130.)

Although the Court agrees that some of Rothman's statements offer legal opinions, the Court will not exclude them at this stage. These statements offer context that is useful to understand what the Department of Commerce did and would do based on the offered interpretation of the law. The Court will not be confused by any legal conclusion Rothman offers as it considers the Motion for Class Certification. It will accordingly discount any consequences Rothman asserts would flow from a statement the Court determines to be an incorrect statement of law.

Because many of the objected to portions are not legal opinions and because under the focused analysis, the Court will not be confused by those that are, the Court will not exclude any of the objected to portions of Rothman's testimony as offering improper legal opinions from its consideration of whether to grant class certification.

### 2.    Materiality

Rothman also offers the opinion that the billing limitations and their omission would have been material to all class members as consumers. Farmers objects to the Court considering these portions of Rothman's testimony arguing that Rothman's opinions have no foundation and he is unqualified to offer them.

Many of the statements Farmers objects to on materiality grounds are not opinions on materiality. For example, Farmers objects to all of paragraph 185 of Rothman's declaration. (*Id.* ¶ 185.) This paragraph only asserts that because the policies uniformly did not disclose exclusions or limitations, there was a common omission and a common

misrepresentation to all proposed class members.  It is possible for common omissions and misrepresentations to not be material to all consumers.  *See Hudock v. LG Elecs. U.S.A., Inc.*, 12 F.4th 773, 777 (8th Cir. 2021).  Therefore, this paragraph does not necessarily express an opinion on materiality.  It is not until the following paragraph that Rothman asserts that this omission was material for all proposed class members.  (Mot. to Exclude Op. Test., Ex. 1 ¶ 186.)  Other objected to portions also do not state opinions on materiality.  (*E.g.*, *id.* ¶ 204 (harm, not materiality); *id.* ¶ 205 (reliance, not materiality).)  Additionally, some of the statements Farmers objects to are statements about what would be material to the Minnesota Department of Commerce and its regulators, not to consumers.  For example, the second sentence of paragraph 199 discusses only what the Department of Commerce would deem material, not what consumers would find material.  (*Id.* ¶ 199.)  Some objected to statements, however, are opinions on what is material to consumers or otherwise rely on an opinion of materiality to consumers.  (*E.g.*, *id.* ¶¶ 186, 197.)

Under the limited and focused analysis appropriate at this stage, Rothman is qualified and provides sufficient foundation for his properly labeled materiality opinions. He has extensive professional experience connected with the insurance industry and insurance regulation.  As Commissioner of the Department of Commerce, he oversaw regulation of the automobile insurance industry in Minnesota.  Rothman's experiences qualify him to testify as to what are understood to be the material parts of an insurance

policy.  *See Fed. Crop Ins. Corp. v. Hester*, 765 F.2d 723, 728 (8ᵗʰ Cir. 1985) ("A witness's practical experience can be the basis of qualification as an expert.").  In particular, his experiences as Commissioner during much of the relevant time period qualify him to testify as to what the Department of Commerce believed, would have found material, and would have done if it was aware of the billing limitations.  He explains why it would have affected the Department's beliefs and actions, namely that Farmers's actions were— according to Rothman—potentially illegal, violated industry standards, and was a limitation that should have been disclosed.[10]  This could have had a material impact on consumers and provides a foundation for Rothman's opinions.

Farmers argues Rothman's failure to engage in consumer research leaves him without a foundation to evaluate materiality to consumers.  Although it is one method, it is not the case that the only method for determining whether something is material to consumers is through a consumer survey.  Farmers may attack Rothman's methods and opinion testimony in a variety of ways, but exclusion is not that the proper method of attack at this preliminary stage.  *Cf. Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8ᵗʰ Cir. 2006) (citing *Daubert*, 509 U.S. at 595) (allowing alternatives methods of attacking

---

[10] The Court reiterates it does not merely accept Rothman's statements that Farmers violated the No-Fault Act and will not be confused by any legal opinions offered by Rothman.  The Court only cites this opinion here to show the foundation and context for Rothman's materiality opinion.

"shaky but admissible evidence" rather than excluding the evidence under the full *Daubert* analysis).

Many of the objected to statements are not opinions on materiality. Others are opinions on materiality unconnected to Farmers's basis for its motion. For Rothman's statements on materiality to consumers, Rothman has demonstrated sufficient qualifications and foundation for his opinions to be considered at the class certification stage. Therefore, the Court will not exclude any of the objected to portions of Rothman's testimony on materiality.

### 3. Harm

Rothman also opines that billing limitations and their omission harmed Plaintiffs and the public. Farmers objects to these statements as harm opinions lacking proper foundation and arguing that Rothman failed to consider all relevant factors.

Similar to its other objections to Rothman's testimony, several of the statements Farmers objects to are not opinion statements that all class members were harmed. For example, in paragraph 180 Rothman asserts that Farmers reduced claims losses below what it otherwise would have experienced. (Mot. to Exclude Op. Test., Ex. 1 ¶ 180.) Rothman does not opine here whether this reduction harmed class members. Other paragraphs fall into this category. (*E.g.*, *id.* ¶¶ 205–08.) Several other paragraphs may suggest a harm but contain more of an inference rather than a statement by Rothman that there was an affirmative harm. (*See, e.g.*, *id.* ¶ 209.)

-26-

Fairly construed, Farmers's argument for excluding these statements seems to be that because Plaintiffs cite some of these opinions to support a possible damages theory based on a specific type of harm, the statements themselves are opinions of harm. (*See* Mem. Supp. Mot. Exclude at 37–38.) The fact that a party uses a witness's testimony to support a contention that the witness did not—and perhaps could not—independently assert, does not render the witness's testimony inadmissible. The Court will, therefore, not exclude these statements at this stage.

Farmers does object to some statements where Rothman opines that Farmers's policies harmed or caused a detriment to consumers: paragraph 22, bullet points 7–8; paragraph 204; and paragraph 210. Rothman has provided a proper foundation for the Court to consider these statements at this time. Rothman opines that consumers were harmed based on the foundation that consumers' rights were limited and they did not receive the promised insurance coverage because they were unable to use benefits at the provider of their choice due to the billing limitations. (1st Rothman Decl. ¶¶ 22, 204, 210.) Under this opinion and Plaintiffs' theory, class members were harmed even if no class member was denied benefits at the provider of their choice in practice. Farmers argues that Rothman did not consider all relevant factors, but, similar to Schwartz's testimony, Rothman's testimony demonstrates that he considered sufficient factors for the Court to find this testimony helpful at this preliminary stage. Farmers is again free to attack this testimony in other ways. *See Robinson*, 447 F.3d at 1100. And it has already done so.

(*See* Mem. Supp. Mot. Exclude at 38; Decl. of Bruce A. Strombom ¶¶ 51, 54, Aug. 4, 2021, Docket No. 238.)  Exclusion, however, is not the proper remedy at this stage.

The Court concludes that using the appropriate analysis as this stage Rothman has provided sufficient foundation for the few harm opinions Farmers objected to.  Therefore, the Court will not exclude any of the objected to portions of Rothman's testimony on harm at the class certification stage.

In sum, using the limited and focused analysis appropriate at the class certification stage, the Court will deny Farmers's motion to exclude the entirety of Schwartz's and portions of Rothman's testimony.  The Court will, therefore, consider the evidence in both declarations.  The Court, however, offers no views on whether this evidence or any other evidence will be admissible at another stage or under a full *Daubert* analysis.

## II.   MOTION FOR CLASS CERTIFICATION

Federal Rule of Civil Procedure Rule 23 governs whether representative parties may proceed as a class.  Plaintiffs "seeking class certification 'must affirmatively demonstrate [their] compliance' with Rule 23." *Hudock*, 12 F.4th at 775 (quoting *Comcast Corp*, 569 U.S. at 33).  "[P]laintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  Plaintiffs bear the burden of showing that a class action is appropriate and that

all the requirements of Rule 23 are met.  *See Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018).

The Court must conduct a "rigorous analysis," and "[f]requently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  When conducting this analysis, however, "the Court accepts the substantive allegations in the plaintiff's complaint as true." *Mathers v. Northshore Mining Co.*, 217 F.R.D. 474, 483 (D. Minn. 2003).  The Court has "broad discretion to decide whether certification is appropriate." *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012).  In exercising this discretion, the Court gives the benefit of the doubt to approving the class.  *Mathers*, 217 F.R.D. at 483.

### A.    Rule 23(a) Requirements

To certify a class, Plaintiffs must demonstrate compliance with all four of Rule 23(a)'s requirements.  *In re St. Jude Med.*, Inc., 425 F.3d at 1119.  These requirements are:

> (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### 1.    Numerosity

Farmers has issued hundreds of thousands of relevant policies since the 2013 cutoff date for the proposed Damages Class.  (1st Asp Decl., Ex. 20 at 5.)  Although it is unclear exactly how many policies are still in effect for the Injunctive Class, Farmers issued more than 100,000 policies in the last year for which data is available.  (1st Asp Decl., Ex. 20 at 5.)  Nothing indicates there has been a substantial decrease in the number of policies in effect.  Farmers also does not dispute that Plaintiffs have satisfied the numerosity requirement.  The Court concludes that Plaintiffs satisfy the numerosity requirement as joinder of all members would be impractical for both classes

### 2.    Commonality

To establish Rule 23(a)(2) commonality, class claims "must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  In other words, the Court considers whether proceeding as a class will "generate common *answers* apt to drive resolution of the litigation." *Id.* (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).  For Rule 23(a)(2) commonality, dissimilarities between class members may be relevant if they preclude a finding that there is "even a single common question." *Id.* at 359 (cleaned up).  Some dissimilarities, however, do not defeat the existence of commonality if there is a

single common question that can drive answers.  *See id.* at 359; *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016).

Common questions exist in this case.  Plaintiffs allege that the billing limitations in all affected policies issued by Farmers violated Minnesota's No-Fault Act and breached the terms of the policy contract in substantially identical ways.  According to Plaintiffs, this harmed all policyholders irrespective of whether a policyholder sought care from an affected provider or even filed a No-Fault claim.  Plaintiffs further allege that Farmers violated the MCFA because failure to disclose these limitations was material and harmful to all class members in a uniform manner as a matter of law.  Resolution of these allegations and legal issue will generate common answers apt to resolve the litigation. Unlike in *Dukes* where the plaintiffs failed to provide evidence of an illegal companywide policy, there is commonality here because Plaintiffs allege a common policy that unites all class members' claims and "touch and concern" all class members.  *See Dukes*, 564 U.S. at 359, 359 n.10.

Although there are some dissimilarities between class members such as how many providers were subject to billing limitations at the time each class member's policy was in effect, commonality still exists because resolution of whether the billing limitations violated the policy contracts or the law and, if so, whether those violations allow class members to recover or to enjoin enforcement will resolve issues "central to the validity of each one of the claims in one stroke."  *See id.* at 350, 359.

Therefore, Plaintiffs have satisfied the commonality requirement for both classes.

### 3.    Typicality

To establish Rule 23(a)(3) typicality, the Court must determine "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff[s]."  *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).  Variations between class members and proposed class members will not preclude finding typicality "if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

For the Damages Class, all proposed representatives held automobile insurance policies issued by Farmers during the relevant period.  For the Injunctive Class, all proposed representatives continue to hold automobile insurance policies issued by Farmers.  The policies have similar language, purport to comply with Minnesota's No-Fault Act, do not contain any language indicating the existence of billing limitations, and are governed by the same laws as all other class members.  Although which providers and how many providers varied over the class period, similar limitations existed for all proposed representatives and all class members.  These and other variations in the

policies do not preclude finding typicality.  *See DeBoer*, 64 F.3d at 1174–75 (holding that different mortgage instruments did not defeat typicality).

Similar to the commonality analysis, the named plaintiffs have similar claims as the class.  Those claims also give rise to the same remedial theories whether for damages or declaratory and injunctive relief.  This is so for two reasons: Plaintiffs allege that (1) the billing limitations uniformly violated the No-Fault Act and (2) the policies and failure to disclose the limitations were material and harmful to all class members and named plaintiffs under the MCFA irrespective of whether a class member or named plaintiff was denied care, would have purchased the insurance in reliance on the lack of exclusion language, or was aware of the billing limitations.  While it is possible that these theories are not viable, their lack of viability would also be typical for all class members.[11]  Thus, there is sufficient typicality here for both classes.

### 4.    Adequacy of Representation

Finally at the Rule 23(a) step, the Court must decide whether the proposed representatives and counsel will "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4).  To demonstrate adequacy of representation, a plaintiff must show that "(1) the representative and its attorneys are able and willing to prosecute the action

---

[11] Farmers also argues that because there is a lack of predominance, there is also no typicality.  (Mem. Opp. Class Cert. Mot. at 63.)  Issues of predominance do not determine certification of the Injunctive Class.  *See* Fed. R. Civ. P. 23(b)(2).  For the Damages Class, this issue is more properly considered under the Rule 23(b)(3) predominance inquiry where it is a specific element.

competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012). This inquiry requires the Court to evaluate the adequacy of both the proposed class representatives and the proposed class counsel.

Farmers asserts that conflicts exist between and among proposed class members and between the proposed classes and some class counsel such that neither the proposed representatives nor class counsel can adequately represent the class.

### a.    Adequacy of Proposed Representatives

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. Conflicts between the representatives and the class and among the class members can defeat class certification. *Id; Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999). "Perfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. To forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 767 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2551 (2021) (quoting *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) (cleaned up).

Farmers identifies two potential intra-class conflicts that it argues preclude class certification.

First, Farmers argues that barring the enforcement of billing limitations and ordering damages for their past implementation will (1) harm many class members through increased insurance premiums and exhausted policy limits and (2) only benefit the handful of class members who might seek out care from a provider subject to a limitation.

Plaintiffs' theories of liability, however, do not rely on the putative benefits or harms of billing limitations themselves; they rely instead on the failure to disclose their existence and whether they violate Minnesota law or the policy language. Plaintiffs' damages theories would benefit all class members because it would cause the benefits of the billing limitations to redound to insureds rather than to Farmers.

Second, Farmers argues certification may create a claim-splitting issue for class members who have suffered harms beyond the remedies available through this class action. Farmers's proposed theories of liability allow all class members to receive their full damages—namely the difference between the value each member actually received and the value each member expected to receive based on the policy terms and the No-Fault Act.[12] Two cases Farmers cites are inapposite because Plaintiffs have not sought

---

[12] Farmers's argument is also discordant with its other defenses to this action—namely that there is no evidence that any class member was denied coverage. Parties may argue in the

different relief for themselves than for absent class members and have not sought to reserve certain claims. *See Foster v. St. Jude Med., Inc.*, 229 F.R.D. 599, 604 (D. Minn. 2005) (finding that the proposed representatives would inadequately represent the class and possibly prejudice absent class members where named plaintiffs sought only medical monitoring for the class, but medical monitoring and damages for themselves); *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 550–51 (D. Minn. 1999) (holding that proposed representatives did not adequately represent the class where named plaintiffs sought to reserve individualized claims in a manner that may prejudice absent class members in future litigation). Unlike these cases, Plaintiffs have not "tailored" the class claims to seek special treatment for the proposed representatives or to increase commonality at the risk of harming absent class members. *See Thompson*, 189 F.R.D. at 551. The actual relief granted to class members may slightly diverge, but not such that it precludes a finding of adequate representation.

The Eighth Circuit in *Vogt* rejected similar intra-class conflict arguments as those Farmers makes here. In *Vogt*, an insurance company argued that the plaintiffs' theories caused intra-class conflict between current and former policyholders and between policyholders of different durations and therefore should preclude class certification.

---

alternative, but assuming this defense is true, there also would be no risk of claim-splitting for this reason.

This argument also does not affect the Injunctive Class as it only affects the future, not any recovery for past harms.

*Vogt*, 963 F.3d at 767.  The panel rejected this argument because the claimed conflict between current and former policyholders was "entirely speculative" and "insufficient to render class certification inappropriate because it relies on nothing more than conjecture about how this lawsuit will affect [the insurer's] future dealings with current policyholders." *Id.*  The panel found that class certification was appropriate despite the various policy durations because this was at most a slight divergence that was greatly outweighed by the classes' shared interests in establishing liability.  *Id.* at 768.  So too here.  Any effect on Farmers's dealings with current policyholders that might cause an increase in premiums or decrease in benefits if Farmers cannot enforce billing limitations is entirely speculative.  Moreover, if the billing limitations are illegal, Farmers cannot implement them irrespective of the outcome of this lawsuit, rendering the connection between this suit and any effect on current policyholders even more speculative.  And any divergence in theories of recovery available to class members would be slight relative to the great weight of the class members' shared interest in establishing Farmers's liability and recovering for the alleged decreased policy value.  In sum, any possible conflicts are not so substantial to forestall class certification.

Finally, all proposed representatives have aided in prosecuting this action, have committed to continuing to do so, and have no known direct conflicts of interest that would hamper their ability to adequately represent absent class members.

Therefore, the proposed representatives meet this prong of the adequacy of representation inquiry.

### b.    Adequacy of Class Counsel

Class counsel must also adequately represent class members who will have no choice in selecting the attorneys appointed to represent them.  Appointed class counsel has a duty to "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).

The Court must consider (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

Farmers does not argue that proposed class counsel fails any of these four considerations.  The filings in this case demonstrate that proposed counsel has sufficiently identified and investigated potential claims and has sufficient knowledge of the applicable law in this case.  Proposed counsel has presented substantial evidence that collectively it has extensive experience handling class actions, other complex cases, and suits related to the relevant laws.  (*See* Decl. of Anne T. Regan, Exs. A–C, Mar. 30, 2021, Docket No. 139.) Proposed counsel has also committed to dedicating sufficient resources—financial and

personnel—necessary to prosecute the case.  (Decl. of Anne T. Regan ¶ 2.)  The record also indicates this commitment.

Additionally, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class" to ensure proposed counsel can fulfill its duty to the class.  Fed. R. Civ. P. 23(g)(1)(B); Fed R. Civ. P. 23(g)(4). Conflicts of interest are one relevant consideration here.  *See Falcon*, 457 U.S. at 157 n.13 (noting the adequacy of representation requirement for class certification includes considering conflicts of interest).

Farmers argues that some of the proposed class counsel has a conflict of interest. This alleged conflict arises because some of the proposed counsel previously represented some providers affected by billing limitations and were involved in negotiating some of the settlement agreements that led to the billing limitations at issue in this case including one still in effect.  As a result, Farmers argues, affected proposed counsel will be unable to fulfill its duty to the class.

Attorneys appearing in the District of Minnesota must comply with the Minnesota Rules of Professional Conduct.  D. Minn. LR 83.6(a).  Because none of the providers identified as creating potential conflicts of interest are current clients of proposed counsel, counsel's duties to these former clients are governed by Rule 1.9 of the Minnesota Rules of Professional Conduct.  An attorney may not represent a person in "a substantially related matter in which that person's interests are materially adverse to the

interests of the former client unless the former client gives informed consent, confirmed in writing."  Minn. R. Prof'l Conduct 1.9(a).

Proposed counsel has complied with the rules protecting former clients.  The former clients have given informed consent, confirmed in writing, to proposed counsel's representation of the Plaintiffs and the proposed class in this case.  With this informed consent, counsel may proceed even assuming their representation is materially adverse to former clients.[13]

Plaintiffs' proposed counsel meets this prong of the adequacy of representation inquiry.  Therefore, Plaintiffs satisfy both adequacy of representation requirements.

In sum, the Plaintiffs have met their burden with respect to each Rule 23(a) element for both proposed classes.

## B.    Rule 23(b) Requirements

The Court must also decide whether the proposed class falls within one of the three Rule 23(b) categories.  Plaintiffs propose to certify the Injunctive Class under Rule 23(b)(2) and the Damages Class under Rule 23(b)(3).

### 1.    Rule 23(b)(2) Injunctive Class

Plaintiffs seek to certify an Injunctive Class requesting declaratory and injunctive relief to bar Farmers from enforcing billing limitations and requiring Farmers to pay

---

[13] Because the informed consent from former clients resolves any potential conflicts issue, the Court will not consider whether representation of the class in this case may be materially adverse to the former clients.

benefits received from providers otherwise subject to billing limitations.  The Injunctive

Class would be comprised only of people who have an applicable policy still in effect.

A class may be certified under Rule 23(b)(2) if "the party opposing the class has

acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Fed. R. Civ. P. 23(b)(2).  If the Rule 23(a) requirements are met and the plaintiffs seek

injunctive or declaratory relief, certification under Rule 23(b)(2) is generally appropriate.

*See DeBoer*, 64 F.3d at 1175 (citing 7A Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice and Procedure*, § 1775 (1986)).  Although Rule 23(b)(2) does not include Rule

23(b)(3)'s predominance of common questions inquiry, 23(b)(2) class claims must still be

cohesive because unnamed class members are bound to the outcome without the

opportunity to opt out.  *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1035 (8th Cir. 2010);

*In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005).  Certification under 23(b)(2)

is not appropriate if the monetary relief sought by the class is not incidental to the

requested injunctive or declaratory relief.  *Dukes*, 564 U.S. at 360.

The Injunctive Class is sufficiently cohesive.  "The key to the (b)(2) class is 'the

indivisible nature of the injunctive or declaratory remedy warranted—the notion that the

conduct is such that it can be enjoined or declared unlawful only as to all of the class

members or as to none of them.'"  *Id.* (quoting Nagareda, 84 N.Y.U. L. Rev., at 132).  Here

because  substantially  similar  policy  language  and  the  same  laws  apply  to  every

policyholder, enforcement of the billing limitations is either unlawful as to all of the class members or none of them.  There is no need for individualized injunctions or declaratory judgments for each class member, and Minnesota law governs the entire class.  The Injunctive Class is therefore unlike the proposed 23(b)(2) class in *In re St. Jude Medical*. There the class had varying, individualized medical circumstances and different state laws governed different class members creating individualized issues destroying cohesiveness. *In re St. Jude Medical*, 425 F.3d at 1122.

The relief the Injunctive Class seeks is an order requiring Farmers to pay benefits irrespective of any billing limitations.  If the Injunctive Class is successful, policyholders will be able to seek care from providers of their choosing and those providers will be able to bill Farmers even if they are subject to billing limitation agreements to the contrary. This declaratory and injunctive relief will be this class's primary relief, not monetary damages.  Although many of the legal issues turn on the same allegations as the Damages Class, the Injunctive Class does not raise the issue of whether a monetary damages award can be calculated on a classwide basis.  Moreover, the evidence and legal arguments collected by Plaintiffs have demonstrated to the Court that the Injunctive Class may proceed even if the Damages Class is not certified.

Because the Injunctive Class is sufficiently cohesive, monetary damages do not dominate the relief sought by the Injunctive Class, and the Injunctive Class may proceed absent the Damages Class, the Injunctive Class has met the Rule 23(b)(2) requirements.

Because it has also met the Rule 23(a) requirements, the Court will grant the motion to certify the Injunctive Class.

### 2. Rule 23(b)(3) Damages Class

The Plaintiffs also seek to certify a Damages Class under Rule 23(b)(3) requesting monetary damages for all class members irrespective of whether class members maintain a policy with Farmers. They seek these damages on three legal theories: (1) breach of contract, (2) violation of the MCFA, and (3) violation of the MDTPA. The Court will determine whether the Damages Class satisfies Rule 23(b)(3) for each claim.

A class may be certified if "the court finds that the questions of law or fact common to class members **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3) (emphasis added). The Court considers (1) the class members' interests in retaining individual control, (2) the extent and nature of any litigation already begun, (3) the desirability of concentrating the litigation in a particular forum, and (4) the difficulties in managing the class action. *Id.*

### a. Predominance

"The predominance requirement is 'demanding'; a court considering certification pursuant to Rule 23(b)(3) must take a 'close look at whether common questions predominate over individual ones.'" *Hudock*, 12 F.4th at 776 (quoting *Comcast Corp*, 569 U.S. at 34). Analysis of this question may overlap with the merits of the case, but a court

-43-

should not resolve the merits at this stage. *In re Zurn Pex*, 644 F.3d at 617. While rigorous, the inquiry at this stage is limited to determining whether common evidence could suffice to make out a prima facie showing of liability on the plaintiffs' theory. *Id.* at 618.

### i.    Breach of Contract Claim

Plaintiffs seek to recover classwide damages for the Damages Class on a breach of contract theory. Under Minnesota law, a breach of contract claim requires the plaintiff to show (1) formation of the contract, (2) performance by the plaintiff of all conditions precedent to the right to demand performance, and (3) breach of the contract by the defendant. *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). A breach of contract claim accrues only when the plaintiff has satisfied all conditions and then attempts to invoke the contract only for the defendant to refuse to perform or to improperly perform. *See id.* at 832–33; *see also Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974).

Farmers was not obligated to perform on the policy contract until an insured was injured and attempted to invoke the policy. Therefore, a breach under the policy occurs— if at all—when an insured is denied benefits.[14] Even if the Court assumes enforcing the billing limitations violated every policy's terms, the mere existence of the limitations

---

[14] The Court need not and does not decide whether this denial and its concomitant breach occurs only after receiving care at an affected provider only for Farmers to refuse to pay or alternatively can occur when an insured requests service from an affected provider only to be turned away because the provider knows it cannot bill Farmers. Resolution either direction would still cause a breach of contract cause of action to accrue on an individualized basis.

would only indicate that Farmers intended to breach if an insured attempted to invoke the policy, not that it had actually breached the policy contract. Intent to breach alone is not itself a breach. Whether and when Farmers breached class members contracts, therefore, depends on individualized questions of whether an insured attempted to invoke the contract and whether the insured was denied the benefit.

Plaintiffs argue that this is a case where common questions predominate on a breach of contract theory because the policies were materially similar and the billing limitations violated them in substantially the same way. In support of this, Plaintiffs point to *McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017), and *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371 (8th Cir. 2018), two cases where class certification moved forward on breach of contract theories. In *McKeage*, the defendants allegedly charged all class members an unlawful fee. 847 F.3d at 999. In *Stuart*, the defendant allegedly underpaid all class members. 910 F.3d at 375. Therefore, in both cases, the defendants had allegedly already engaged in an action breaching the contract that affected all class members such that a breach of contract claim had accrued under Minnesota law to all class members in a common manner. Here, a breach of contract claim has not accrued to all class members in a common manner because not all class members have sought to invoke the contract only for Farmers to improperly perform.

Because individualized questions predominate the breach of contract claim, the Court will deny class certification to the Damages Class on this claim.

-45-

ii.        **Minnesota Consumer Fraud Act Claim**

Next, the Plaintiffs seek to recover classwide damages for the Damages Class under the MCFA. The MCFA prohibits the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . . ." Minn. Stat. § 325F.69, subd. 1.

"[F]raud cases often are unsuitable for class treatment, because proof often varies among individuals concerning what representations were received, and the degree to which particular person relied on the representations." *Hudock*, 12 F.4th at 776. For MCFA claims, the Minnesota legislature has relaxed the traditional common law reliance standard. *Id.* (citing *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13–14 (Minn. 2001)). Under the MCFA, "it is not necessary to *plead* individual consumer reliance on the defendant's wrongful conduct." *In re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008) (emphasis in original) (quotation omitted). "[A]lthough plaintiffs must still *prove a causal nexus* between the allegedly wrongful conduct of the defendants and their damages, this proof need not include *direct evidence* of reliance by individual consumers of defendants' products." *Id.* (emphasis in original) (cleaned up). Instead, other direct or circumstantial evidence may be used. *Id.* For example, a defendant's intent to influence consumers can be important and relevant evidence. *State v. Minn. Sch. of Bus., Inc.*, 935

N.W.2d 124, 136 (Minn. 2019).  This relaxed showing is especially relevant in cases where the defendant engaged in "a lengthy course of prohibited conduct that affected a large number of consumers." *Grp. Health Plan*, 621 N.W.2d at 14.

Even if relaxed, proof of causation is still necessary under the MCFA. *Hudock*, 12 F.4th at 776.  Defendants generally can present individualized evidence negating causation and reliance. *Id.*  Such issues will often leave MCFA cases unsuited for class treatment despite the relaxed standard. *Id.*

Plaintiffs claim that Farmers withheld the same information from all policyholders and consumers: the existence of billing limitations.  They allege that Farmers had a duty to disclose this information because of its special knowledge and other representations that would be misleading absent additional disclosure.  According to Plaintiffs, these limitations violated Minnesota's No-Fault Act and the policy terms in a substantially identical manner.  They further allege that it was impermissible to sell these policies under the No-Fault Act and that the Department of Commerce would have prevented their sale—or at a minimum required disclosure of the limitations—had it been aware of the limitations.  Plaintiffs also allege that Farmers had a duty to disclose these limitations to all class members and that this omission was material to the entire class.  Finally, Plaintiffs claim that these limitations decreased the value of the coverage received, harming all class members.

Farmers responds that there is no omission, materiality, reliance, or harm that can be established by common evidence here.[15]  It argues that because the billing limitations varied over time, there was no common omission.  Farmers asserts that Plaintiffs have failed to provide any evidence that the omission was material to any purchasing decision much less to all class members.  Indeed, Farmers provides evidence in the form of expert testimony analyzing consumer research that shows consumers were unlikely to name the inability of some providers to bill insurance companies as a significant factor in the purchasing decision and thus it was unlikely that class members considered this in their purchasing decisions.  (*See* Decl. of Rene Befurt ¶¶ 16–21, May 28, 2021, Docket No. 153.) Farmers also argues that Plaintiffs have submitted no evidence that all class members relied on the omissions and point out that one named Plaintiff continued purchasing policies even after learning of the billing limitations.  Finally, Farmers argues that Plaintiffs cannot establish harm through common evidence.  This is so, according to Farmers, because (1) most class members were unharmed because they were never denied coverage; (2) even if they were harmed, there is no common, classwide method for

---

[15] At this stage in the case, Farmers does not dispute that it had a common law duty to disclose the existence of the billing limitations.  If it did, this would raise another common question, not an individualized inquiry.  This is so because it is a common question whether Farmers had "special knowledge" of the billing limitations which class members did not have access to and whether Farmers's other representations including the policy language would be misleading without disclosure of the billing limitations. *See Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014).

determining damages; and (3) Plaintiffs' theories of recovery are unconnected to any alleged harm.

In many cases, these arguments would likely defeat class certification in a common law fraud or even an MCFA case because individualized determination would prevent common issues from predominating.  For example, in *Hudock* the defendants presented evidence that some consumers did not see or did not rely on the allegedly false misrepresentations about the refresh rates on televisions.  *Hudock*, 12 F.4th at 777. Evidence demonstrated that refresh rates were immaterial to some consumers and factors other than refresh rates motivated at least some consumer purchase decisions. *Id.*  These issues with the causal nexus meant that individual issues of causation and reliance prevented common issues from predominating and 23(b)(3) class certification was inappropriate.  *Id.*

Because of several unique factors present here, this case presents common questions such that it is the exception to the general rule that fraud claims including MCFA claims are often unsuited for class treatment.

In Minnesota, automobile insurance is governed by several laws and extensively regulated by the Department of Commerce.  Plaintiffs allege that billing limitations violate Minnesota's No-Fault Act and thus were unenforceable.  If class members were unaware of the billing limitations as Plaintiffs allege, class members were unable prevent the enforcement of the billing limitations if a provider failed to provide care.  Plaintiffs further

claim that if the Department of Commerce were aware of the limitation, Farmers would not have been allowed to sell the policy and even if the Department had allowed it, Farmers would have been forced to disclose the limitations to consumers.   This distinguishes this case from *Hudock* because there is no law that requires a specific refresh rate for televisions nor would a regulator bar sale of a television based on its refresh rate or inadequate disclosure of that rate.

If Plaintiffs' interpretation of the law is correct and Farmers would have been barred from selling the policies or at least required to disclose the billing limitations, several possible common questions flow from these conclusions.   First, the Minnesota Legislature and the Department of Commerce may have determined that billing limitations are material as a matter of law, irrespective of individual considerations. Second, they may have also determined the limitations or at least the failure to disclose them is harmful to consumers as a matter of law, again irrespective of individual considerations.   Together, it is possible the Legislature and the Department have determined that there is a causal nexus between the limitations, failure to disclose them, and harm to consumers.   Additionally, if Plaintiffs are correct that Farmers would otherwise have been barred from selling these policies as is, no consumer could have purchased the policies but for Farmers's omission of the billing limitations to policyholders and regulators.   If no consumer could have purchased a product but for the omission, the omission is material to all consumers because the omission is essential to

the very ability to purchase the product. *See Material*, *Black's Law Dictionary* (11th ed. 2019). Instead, consumers were forced to rely on the representation that no provider was excluded because consumers did not know they could make another choice.

If Farmers could not sell the policy without the omission, it is also unsurprising that consumer research and surveys did not indicate that consumers considered billing limitations or access to providers in their purchasing decisions. If Plaintiffs are correct, a consumer could not choose a legal No-Fault insurance policy with billing limitations even if the consumer wanted to because such policies could not be lawfully sold. As a result, it is highly unlikely consumers would name provider choice or billing limitations in their purchasing decision because this part of the purchasing decision had already been made for them by the legislature. It would be nonsensical for consumers to name billing limitations as a consideration if it could not legally be a consideration.

Take the purchasing of cars as an example. It would be unsurprising to find that car buyers do not mention that a car having functioning seat belts influenced their purchasing decisions. All new cars are uniformly required to have them, and consumers would naturally assume the cars they purchase have functioning belts that comply with the law. Therefore, if a car manufacturer knew that its seat belts always failed in a crash, the fact that consumers do not mention this issue as relevant to their purchasing decision would not indicate that consumers would not consider the lack of functioning seat belts to be material and harmful. There is no reason to consciously consider something that a

consumer assumes to be and is in fact mandatory.  Instead, all consumers rely on the existence of functioning seat belts because the law requires them.  The Congressionally enacted seat belt requirement may also indicate that Congress has determined that the omission of functioning seat belts is material and harmful to all car buyers.  Because a manufacturer could not legally offer a car without functioning seat belts, consumers would only be able to purchase such a car if the manufacturer omitted this fact.  Buyers would thus rely on the fact that the car was for sale to in turn rely on the car having functioning seat belts.

So too here if Plaintiffs' theory is correct.  If the No-Fault Act bars these billing limitations and if the Department of Commerce would not have allowed these policies to be sold or at least not without disclosure, the billing limitations and their omission may be material and harmful to all purchasers of automobile insurance.  Consumers would also have relied on the fact that the policies were available for purchase to mean that there were no billing limitations.  Materiality, harm, and reliance would therefore apply to all consumers even if some consumers never consciously considered billing limitations because insurance companies could not legally offer policies with limitations for consumers to consider.  This is again unlike *Hudock* because no statute or regulatory body raised a classwide issue that inaccurately reported television refresh rates are inherently material and harmful to all television purchasers nor a law that inherently forces all consumers to rely on refresh rate representations in their purchasing decisions.  Thus,

while *Hudock* laid out the general rule that fraud claims are often unsuited for class treatment, this case demonstrates the type of fraud claim that is so suited.

Furthermore, automobile insurance is different from other products where an MCFA class might be inappropriate in yet another way: automobile insurance is required to operate a vehicle in Minnesota. Minn. Stat. § 169.791, subd. 2. While no one is legally required to drive, driving is an essential part of modern life for many people and businesses. Therefore, purchasing insurance and relying on available insurance products complying with the law is also an essential part of modern life for many.

Taken together, Plaintiffs have alleged consumers were supposed to be in a marketplace where they are unable to consider whether they want to purchase insurance products with billing limitations, potentially because such limitations are material and harmful as a matter of law. If consumers are unable to consider billing limitations, pricing and purchasing decisions would reflect this fact irrespective of what consumers would have done had they been given the opportunity to make such a choice. Consumers rely on sellers of highly regulated products to follow the law. Here, this is even more salient because many consumers had little real choice but to enter this marketplace.

In sum, this case raises several common questions: (1) whether the billing limitations violate the No-Fault Act, (2) whether the billing limitations violated the policies, (3) whether Farmers would have been able to sell the policies with the limitations at all, (4) whether Farmers would have been able to sell the policies only if it disclosed the

limitations, and (5) whether under Minnesota law it is inherently material and harmful to all purchasers as a matter of law, irrespective of individual consumer differences, if a company was only able to sell a product by fraudulently omitting a fact that if disclosed the company would have been barred from selling.

Whether Plaintiffs are correct on this theory poses several common questions of law that predominate any differences between class members.   Under this theory, individualized evidence may be irrelevant if the Minnesota Legislature and Department of Commerce has resolved many of these questions with answers common for all Minnesota consumers including (1) whether the billing limitations are material and harmful, (2) whether consumers must rely on a marketplace where they cannot exist at least without disclosure, and (3) whether there is a causal nexus between the billing limitations, their omission, and harm.

Plaintiffs' legal theories create additional common questions.   Although the number of billing limitations varied with time it is undisputed that their existence was not disclosed to any policyholder.  Therefore, the essential nature of the limitations, whether Farmers had a fiduciary, legal, or other duty to disclose them, their effect on the plans, and their legality are all common questions.  Further, Plaintiffs have alleged that Farmers intended to deceive consumers and influence their purchasing decisions as part of a lengthy course of allegedly prohibited conduct targeting hundreds of thousands of consumers.  If true, this is the type of evidence where the relaxed MCFA standard is most

applicable and common evidence can establish reliance.  *See Grp. Health Plan*, 621 N.W.2d at 14; *Minn. Sch. of Bus.*, 935 N.W.2d at 136.  Finally, while the Court recognizes that Minnesota law did not import the fraud-on-the-market theory into MCFA cases, the Court finds the analogy useful here like the Minnesota Supreme Court has.  *See Minn. Sch. of Bus.*, 934 N.W.2d at 135 n.5.  If the No-Fault Act and Minnesota regulators barred selling policies subject to billing limitations, the automobile insurance market may have priced in this requirement.  Thus, consumers and competing insurance companies entering this market would have believed they were comparing apples to apples—only products with no limitations—when in practice they were unknowingly comparing apples to oranges—some products with limitations to those without.  In other words, consumers and competing insurance companies were relying on a marketplace comprised of only apples when what they got was a marketplace with some oranges masquerading as apples.  This would affect the market in common ways and generate the common question of whether reliance can be presumed for all class members.  *See id.* at 135.  Allowing Plaintiffs to pursue these theories would be in line with the Minnesota Legislature's policy of encouraging aggressive prosecution of MCFA violations.  *See id.* at 133.

These common questions, however, are still inadequate for Rule 23(b)(3) certification if damages cannot be measured on a classwide basis.  At class certification, plaintiffs must show that "damages are susceptible of measurement across the entire

class for purposes of Rule 23(b)(3)." *Comcast*, 569 U.S. at 35.  "Calculations need not be exact, but at the class-certification stage . . . any model supporting a plaintiff's damages case must be consistent with its liability case." *Id.* (cleaned up).

If Plaintiffs' theory discussed above is correct, all class members were harmed and Farmers unlawfully gained because of the billing limitations.  Plaintiffs' expert Schwartz proposed a model that measures the decreased value received by consumers and Farmers's concomitant unlawful gain.  The MCFA allows for these types of damages.  *See Grp. Health Plan*, 621 N.W.2d at 13; *Minn. Sch. of Bus.*, 935 N.W.2d at 138–39.  There will be differences between plaintiffs—the premium paid, how long billing limitations affected class members, and how extensive the limitations were—but Plaintiffs have proposed methods for calculating damages on a classwide basis and to take into account these and other differences to a sufficient degree.

Although fraud claims including MCFA claims are not the typical cases appropriate for class action treatment, Plaintiffs' allegations demonstrate that common questions predominate over individualized questions here.  Plaintiffs' theories about the No-Fault Act and the Department of Commerce may even make individualized inquiries that might predominate in other cases irrelevant in this case.  In sum, Plaintiffs have demonstrated that if their allegations and theories are true, common evidence could suffice to establish a prima facie case of classwide liability.

Plaintiffs may be incorrect on their theories, but Plaintiffs need not establish that they will win on the merits to certify a class and the Court is not licensed to engage in a full merits inquiry. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *Postawko*, 910 F.3d at 1037. Whether the billing limitations violated the No-Fault Act and whether these policies could have been sold with or without disclosing the limitations are questions common to all consumers and resolution of these questions is essential to the claims. Under Plaintiffs' theory, the class will succeed or fail on its MCFA claims in unison, and therefore common questions predominate. *See Amgen*, 568 U.S. at 459–60.[16] Similarly, Plaintiffs need not definitively prove materiality at this stage. *See id.* at 470. Plaintiffs have alleged that Minnesota law establishes materiality here. Whether this contention and other contentions are correct is reserved for later stages and should not be resolved in deciding whether to certify the class. *See id.* at 466.[17]

---

[16] For similar reasons, the Court does not evaluate whether all of Plaintiffs various damages theories are viable at this stage. Farmers contends that some of the damages theories—including the "full refund" and "amount Farmers gained"—are not viable. Resolution of these questions are again common to the class, further illustrating that common questions predominate, and the Court need not establish who will win on these questions at this stage. *See Amgen*, 568 U.S. at 460.

[17] If at a later stage the theories undergirding class certification fall apart and individualized questions come to predominate, the Court may decertify the class at this time. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 612 (8th Cir. 2017), *amended*, 855 F.3d 913 (8th Cir. 2017) ("[A]fter initial certification, the duty remains with the district court to assure that the class continues to be certifiable throughout the litigation . . . ."); *see also Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (affirming decertification after a jury verdict).

Because Plaintiffs have alleged a classwide omission that raises common questions of materiality, harm, and reliance, Plaintiffs' MCFA theory combined with the No-Fault Act presents a case where a claim sounding in fraud is viable for class treatment.

### iii.    Minnesota Uniform Deceptive Trade Practices Act Claim

Finally, Plaintiffs seek to recover classwide damages for the Damages Class under the MDTPA.  The MDTPA states that, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." Minn. Stat. § 325D.45, subd. 1. Because the MDTPA provides relief for "a person likely to be damaged," it only provides injunctive relief "from future damage, not past damage." *Jaskulske v. State Farm Mut. Auto. Ins. Co.*, No. 14–869, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014) (quotation omitted); *see also Chairez v. AW Distrib., Inc.*, No. 20-1473, 2021 WL 1600494, at *9 (D. Minn. Apr. 23, 2021) ("An injunction is the only available remedy for the [Minnesota] Deceptive Trade Practices Act claim.").

Therefore, there is no applicable theory of recovery that predominates for the Damages Class on the MDTPA claim.  Because the Plaintiffs have not put forward a theory by which damages are attributable to and consistent with this claim, it cannot provide the

basis for class certification to the Damages Class.  *See Comcast*, 569 U.S. at 35.  The Court

will deny class certification to the Damages Class on this claim.[18]

### b.    Superiority

"There is no bedrock standard upon which a Court determines that a class action

is superior to other available methods for the fair and efficient adjudication of the

controversy." *Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 265 (D. Minn.

2001) (internal quotation marks omitted).  Rather, courts generally look to the following

non-exhaustive list of relevant factors: (1) the interest of class members in individually

controlling their claims, (2) the extent to which litigation that has already begun, (3) the

desirability of concentrating the litigation in a particular forum, and (4) the likely

difficulties of managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).  Class actions are

also superior if the alleged damages are small, and absent a class action most plaintiffs

would not realistically have a day in court.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

809 (1985).

In this case, there is no evidence of similar pending litigation, and it is doubtful that

potential class members would rather control separate actions.  Most class members are

likely unaware that Farmers's conduct could be unlawful as Plaintiffs' allegations are

based on information that has been omitted to potential class members leaving most in

---

[18] Denying certification to the Damages Class on the MDTPA claim, however, does not
prevent the Injunctive Class from seeking an injunction under the MDTPA.

the dark.  The average premium is less than $2,000, thus even if class members are entitled to a full refund, most class members would be unlikely to seek recovery in this complex case and even less likely if class members are entitled to only a fraction of their premiums.  Because the alleged damages are small and the potential costs of litigation high, individual actions are impracticable.  *See Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 379 (D. Minn. 2013) ("Because all class plaintiffs are unlikely to bring their own claims for FDCPA violations, the Court finds that a class action in this case is best suited to address 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" (quoting *Amchem Prods.*, 521 U.S. at 617)).  Most class members would not have a realistic day in court if forced to proceed on an individualized basis.

Managing this class action on the MCFA claim will not present undue difficulties.[19] It is true that class members purchased insurance from different entities and the billing limitations varied with time.  These entities, however, share a common service mark and common administration of their plans through Farmers Group, Inc.  Importantly, the relevant policy terms themselves are materially identical, are governed by the same laws, and the billing limitations are similar in their essential elements and legality.  Given the size of the class—more than 100,000 possible members—certification will be "superior

---

[19] Because the Court finds that individualized questions predominate on all claims other than the MCFA claim, the Court will not evaluate the superiority of resolving these claims in a class action.

to, and more manageable than, any other procedure available for the treatment of factual and legal issues raised by Plaintiff's claims." *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010).

In sum, because the Court concludes that the Damages Class has met the Rule 23(a) requirements and Rule 23(b)(3)'s predominance and superiority requirements on its MCFA claim, the Court will grant Plaintiffs motion to certify the class on this claim alone. The Court will, therefore, deny the motion to certify the Damages Class as to the remaining claims.

### C.    Summary and Appointment of Class Representatives and Counsel

The Court will certify the Injunctive Class under Rule 23(b)(2) and certify the Damages Class under Rule 23(b)(3) on the MCFA claim.  It will, however, deny class certification to the Damages Class on its other claims.

Because the proposed representatives' claims are typical of the proposed classes and they will adequately represent the classes as demonstrated in part by their active participation and adequate representation to date, the Court will appoint the proposed representatives for each class.  For the Injunctive Class, the Court will appoint Virginia Sanchez-Gomez and El Chinelo Market LLC.  For the Damages Class, the Court will appoint Taqueria El Primo LLC, Mitchelle Chavez Solis, El Chinelo Produce, Inc., Virginia Sanchez-Gomez, Benjamin Tarnowski, and El Chinelo Market LLC.

Because proposed counsel satisfies the Rule 23(g)(1)(A) considerations, has met its duty to its formers clients, and there is no other matter pertinent to counsel's duty to the class under Rule 23(g)(1)(B), the Court will appoint Lockridge Grindal Nauen P.L.L.P., Hellmuth & Johnson PLLC, and Sawicki & Phelps, P.A. as class counsel for both the Injunctive Class and the Damages Class.

## CONCLUSION

After engaging in the focused *Daubert* analysis appropriate at the class certification stage, the Court will deny Farmers's motion to exclude the expert testimony offered by Plaintiffs in support of class certification.  Plaintiffs are not required to calculate a final damages amount at this stage and the model Schwartz provides is sufficient under the focused analysis to conclude that he and Plaintiffs have a model that may be able to calculate classwide damages when necessary.  Rothman provides sufficient foundation for his statements of materiality and harm under the focused analysis and the Court will not be misled by any legal opinions he provides, considering them only as context for his other opinions.

The Court will certify the Injunctive Class because it meets the Rule 23(a) requirements and it presents questions demonstrating that final injunctive relief may be appropriate to the class as a whole under Rule 23(b)(2).

The Court will certify the Damages Class only for the MCFA claim.  The Court concludes that that the Damages Class meets the Rule 23(a) requirements.  On the MCFA

claim, Plaintiffs have put forth questions common to class members that predominate individualized questions and class resolution is superior under Rule 23(b)(3).  On the breach of contract claim individualized questions predominate, and on the MDTPA claim Plaintiffs have not put forth a viable theory of classwide recovery.

Because the proposed class representatives and class counsel will adequately represent the class including absent class members and class counsel has resolved any possible conflicts issue, the Court will appoint the proposed class representatives and class counsel.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Exclude Expert Testimony [Docket No. 170] is **DENIED**.

2. Plaintiffs' Motion to Certify a Class [Docket No. 124] is **GRANTED IN PART** as to:

   a. The Injunctive Class on all applicable Counts of the Second Amended Complaint [Docket No. 65]; and

   b. The Damages Class on Count II of the Second Amended Complaint [Docket No. 65].

3. Plaintiffs' Motion to Certify a Class [Docket No. 124] is **DENIED IN PART** as to the Damages Class on Count IV and Count V of the Second Amended Complaint [Docket No. 65].

4. The Court certifies two classes:

   a. An Injunctive Class defined as:

   All persons or entities or purchased an insurance policy on or after January 17, 2013 within the State of Minnesota from any of the Defendant Insurers that provided for medical expense benefits under Minnesota's No Fault Act, and who maintain that policy.

   b. A Damages Class defined as:

   All persons or entities or purchased an insurance policy on or after January 17, 2013 within the State of Minnesota from any of the Defendant Insurers that provided for medical expense benefits under Minnesota's No Fault Act.

   c. Defendants' employees or officers, any entity in which any Defendant has a controlling interest, any entity that has a controlling interest in any Defendant, Defendants' legal representatives, Defendants' assigns and successors, any judge and any judicial staff and any immediate family of any judge to whom this case is assigned,

and any juror to whom this case is assigned are excluded from both classes.

5.  The Court appoints two sets of class representatives:

    a.  For the Injunctive Class: Virginia Sanchez-Gomez and El Chinelo Market LLC; and

    b.  For the Damages Class: Taqueria El Primo LLC, Mitchelle Chavez Solis, El Chinelo Produce, Inc., Virginia Sanchez-Gomez, Benjamin Tarnowski, and El Chinelo Market LLC.

6.  The Court appoints Lockridge Grindal Nauen P.L.L.P., Hellmuth & Johnson PLLC, and Sawicki & Phelps, P.A. as class counsel for both classes.

DATED:  December 28, 2021
at Minneapolis, Minnesota.

                                         JOHN R. TUNHEIM
                                         Chief Judge
                            United States District Court